IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------

FELIX ANTONIO COLON,

                              Plaintiff,

     -v.-                                              9:03-CV-1018
                                                       (LEK)(DEP)


KATHLEEN H. SAWYER, *et al.*,

                              Defendants.

------------------------------------------------------------------

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

FELIX ANTONIO COLON, *pro se*

FOR DEFENDANT:

HON. GLENN T. SUDDABY                 BARBARA D. COTTRELL, ESQ.
United States Attorney                Assistant U.S. Attorney
James T. Foley U.S. Courthouse
445 Broadway
Room 218
Albany, NY 12207-2924

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____   REPORT AND RECOMMENDATION

     Plaintiff Felix Antonio Colon, a federal prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

against various employees of the federal Bureau of Prisons ("BOP"), sued

both individually and in their official capacities, claiming deprivation of his

constitutional rights.  Plaintiff, a diagnosed asthmatic, alleges that

defendants caused him to be exposed to environmental tobacco smoke

("ETS"), or second hand smoke, while incarcerated at the Ray Brook

Federal Correctional Institution ("FCI Ray Brook"), and that as a result he

has suffered adverse physical consequences.  Colon asserts that his

exposure to ETS represents cruel and unusual punishment, in violation of

his rights secured under the Eighth Amendment, as well as a deprivation of

his Fifth Amendment substantive due process rights.

In response to plaintiff's amended complaint, defendants have moved

seeking dismissal of his claims for failure to state a cognizable claim or, in

the alternative, the entry of summary judgment dismissing plaintiff's

complaint as a matter of law.  For the reasons set forth below I recommend

that the motion be granted, in part, based principally upon plaintiff's failure

to allege personal involvement of the various of the named defendants in

the constitutional violations alleged, but otherwise denied.

I.     BACKGROUND

The circumstances surrounding plaintiff's claims are not particularly

complicated.  As will be seen, however, the material facts giving rise to

those claims are sharply contested in many respects, including as relates to

enforcement of a BOP policy governing smoking within the facility in which

plaintiff was housed.

Plaintiff is a federal inmate entrusted to the custody of the BOP as a

result of a drug conviction from the Eastern District of Virginia.  Lee Decl.

(Dkt. No. 37) Doc. 1.  At the times relevant to the claims asserted in his

complaint, plaintiff was an inmate at FCI Ray Brook, and was housed either

in the Genesee Unit, which consists of variously configured cells

accommodating between two and twelve inmates, or at the facility's special

housing unit ("SHU").  Amended Complaint (Dkt. No. 13) ¶ 17; Darrah Decl.

(Dkt. No. 37) ¶ 7 & Doc. 14.  While in the Genesee Unit, plaintiff was

assigned at different times to ten, six, four and two person cells.  *Id.*

Plaintiff, a non-smoker, has been diagnosed with and treated for

asthma during the period of his incarceration at FCI Ray Brook, dating back

to his first reported complaint of respiratory difficulties on April 10, 2003.

*See* Lee Decl. (Dkt. No. 37) Doc. 4, at 19.  On that occasion, Colon

complained to prison medical officials of eye irritation, dizziness, and fatigue

attributed by him to his exposure to cigarette smoke.  *See id.*

3

Since that initial encounter in April of 2003, plaintiff has presented to medical personnel at FCI Ray Brook on several occasions complaining of various symptomology including shortness of breath, fatigue, chest and musculoskeletal pain, and migraine headaches. *See generally id.*, Doc. 4. Plaintiff has been diagnosed as suffering from asthma, a condition which he claims neither runs in his family nor was experienced by him prior to his arrival at FCI Ray Brook, and has been treated in various ways including through the use of Albuterol and Triamcinolone inhalers. *Id.* According to the plaintiff, he is required to use his Triamcenolone inhaler daily, as prescribed, and his Albuterol inhaler as often as two or three times daily. Lee Decl. (Dkt. No. 37) Doc. 4, at 3-4.

Plaintiff's claims, which stem from attribution of his physical difficulties to ETS exposure, implicate various BOP policies and practices, both nationwide and at the facility level. A smoking policy was implemented by the BOP in August of 1994 when Program Statement 1640.03, addressing designation of smoking and non-smoking areas, went into effect. *See* Darrah Decl. (Dkt. No. 37) ¶ 4 & Doc. 1. In accordance with the directives of Program Statement 1640.03, between August of 2002 and August, 2004 FCI Ray Brook operated under Institution Supplement No. RBK 1640.3B,

4

dated August 30, 2002, providing, *inter alia*, that all areas of FCI Ray Brook were to be treated as no smoking areas unless otherwise denoted by sign reading "Designated Smoking Area." *Id.* ¶¶ 4-5.  Under that local policy, smoking in regular housing areas was permitted only in two person cells upon consent of both occupants, but was not allowed in any units housing more than two inmates.  *Id.* ¶ 5.  During that period, to the extent practicable, non-smoking inmates were not housed with smoking inmates. *Id.*

Effective on July 15, 2004, BOP Program Statement 1640.03 was superseded by a new Program Statement 1640.04, dated March 15, 2004, effectively banning all indoor smoking at BOP facilities, with limited exceptions not applicable in this case.  Darrah Decl. (Dkt. No. 37) ¶ 6 & Doc. 3.  Under Program Statement 1640.04, a facility warden was permitted, in his or her discretion, to permit smoking in clearly identified outside areas. *Id.* ¶ 6.  In response to Program Statement 1640.04, the warden at FCI Ray Brook issued a new Institution Supplement on August 23, 2004, No. RBK 1640.3C, allowing smoking by both inmates and staff only in designated outdoor areas, and prohibiting smoking in any inside areas, including housing units themselves.  *Id.*

5

At the heart of this action is controversy regarding the level of enforcement of these smoking policies at FCI Ray Brook.  According to the defendants, the BOP and local policies are strictly enforced, and the Genesee Unit in which Colon has been housed at portions of the relevant times is staffed around the clock with a unit officer who patrols the area to insure compliance with all institution rules and regulations, including those regarding smoking.  Darrah Decl. (Dkt. No. 37) ¶ 8.  Both staff members and inmates are reminded periodically, through written memoranda, of the smoking policies at effect at the institution.  *Id.*  Violators are either informally reminded of the smoking policies or are the subject of more formal action, including through the issuance of incident reports.  *Id.* ¶ 9. Between the beginning of 2002, the year in which plaintiff arrived at FCI Ray Brook, and the end of 2003, 107 incident reports were administered to inmates for smoking in non-designated areas; twenty-five of those were written for violations occurring in the Genesee Unit.[1]

Plaintiff's assertions regarding the level of enforcement of the existing smoking policies are not at all congruent with those of the defendants. Plaintiff contends, and has submitted both his declaration to that effect and

---

[1]        There is no indication in defendants' papers regarding either the potential, or any actual, consequences attendant to such incident reports.

affidavits from fellow inmates corroborating his claim, that the smoking

policy is not faithfully implemented at FCI Ray Brook, a fact which he

attributes in part to shortage of staff and overcrowding of inmates as well as

poor ventilation.  According to Colon, inmates are still permitted to smoke in

housing units throughout the day and particularly after 8:30 p.m. when,

according to him, the units are locked down.  Colon Aff. (Dkt. No. 40) at 2.

Fellow inmates confirm that inmates and staff members are freely permitted

to smoke cigarettes throughout the institution, including near entrances to

the dining hall and the Genesee Housing Unit.  One of those inmates states

that he has been permitted to smoke cigarettes freely while in the same

room as the plaintiff, without consequence.  *See* Belcher Aff. (Dkt. No. 40) ¶

12.

II.   PROCEDURAL HISTORY

After exhausting available administrative remedies in an effort to seek

redress of his complaints regarding exposure to ETS and enforcement of

governing smoking regulations, *see* Lee Decl. (Dkt. No. 37) Docs. 2A, 2B,

2C, 3A, 3B and 3C, plaintiff commenced this action on August 18, 2003,

Dkt. No. 1, and on January 9, 2004 filed an amended complaint as a matter

of right revising his claims somewhat and adding several defendants to

7

those initially sued.  Dkt. No. 13.  Named as defendants in plaintiff's amended complaint are several BOP employees, including Kathleen H. Sawyer, the agency's former Director; Harley Smith, a Unit Counselor; Juliette Hurley, a Unit Case Manager; Connie Copeland, a Unit Manager; C. Chester, a BOP Assistant Warden; (first name unknown) Sherrod, also an Assistant Warden; Michael K. Nalley, formerly the Warden at FCI Ray Brook; Harley G. Lappin, current Director of the BOP; D. Drew, the new Warden at FCI Ray Brook; (first name unknown) Copenhaver, a BOP Assistant Warden; (first name unknown) Fink, a BOP Safety employee; (first name unknown) Baldwin, a BOP officer; and Mickey E. Ray, the BOP Northeastern Regional Director.  *See id.*  Plaintiff's amended complaint purports to assert three causes of action, including under 42 U.S.C. § 1983, based upon defendants' failure to supervise and enforce applicable rules and regulations; 42 U.S.C. § 1985(1)-(3), for conspiracy to violate his civil rights, including under the Fifth and Eighth Amendments to the United States Constitution; and 42 U.S.C. § 1986, for failure to prevent a violation of his civil rights under both the United States Constitution and federal law.[2]

---

[2]     In the introduction to his amended complaint, plaintiff also professes to assert claims under 18 U.S.C. §§ 241 and 242.  Those statutes, however, are criminal in nature and do not give rise to civil actions for private enforcement.  *Ippolito v. Meisel*, 958 F.Supp. 155, 161 (S.D.N.Y. 1999).  In any event, since plaintiff's reference

*Id.*

On December 29, 2004 those defendants who had thus far appeared in the action moved seeking dismissal of plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, the entry of summary judgment pursuant to Federal Rule of Civil Procedure 56 dismissing plaintiff's claims as a matter of law.[3]  In their motion, defendants raise a number of arguments addressing all or some of plaintiff's causes of action, arguing that 1) plaintiff's substantive Fifth Amendment due process violation and Eighth Amendment claims lack merit, and the allegations set forth in this complaint therefore do not rise to a level of constitutional significance; 2) plaintiff may not sue the defendants in their official capacities; 3) plaintiff has failed to allege the requisite personal involvement

---

to those provisions is not reiterated in his three designated causes of action, I will not address them in this report and recommendation.

[3]       As a result of a combination of circumstances, including difficulties in effectuating service upon defendants named in plaintiff's original complaint and the filing of, and attempts to serve, his amended complaint, there was at one point confusion regarding which defendants had been served in the action, and with which version of plaintiff's complaint.  That confusion has been eliminated as a result of the issuance by me of an order dated September 28, 2005, addressing plaintiff's motion to compel the United States Marshal to serve his amended complaint upon all defendants, coupled with a subsequent letter filed by defendants' counsel indicating that she is authorized to accept service and appear on behalf of the previously unserved defendants, including Sherrod, Nalley, Lappin, Drew and Copenhaver.  *See* Dkt. Nos. 48, 49.  I have therefore treated the pending motion as having been interposed on behalf of all of the defendants named in plaintiff's amended complaint.

on the part of the defendants in the constitutional violations alleged; and 4) in any event, defendants are entitled to qualified immunity.  Plaintiff has since responded in opposition to defendants' motion submitting both an affidavit and memorandum on his behalf and, as was previously noted, affidavits of several fellow inmates at FCI Ray Brook, all of which were filed together on March 3, 2005.[4]  Dkt. No. 40.

Defendants' motion, which is now ripe for determination, has been forwarded to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Summary Judgment Standard[5]

Summary judgment is governed by Rule 56 of the Federal Rules of

---

[4]     In his opposition to defendants' motion, plaintiff states that it was his intention to include a claim in his complaint for negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346.  Plaintiff's complaint, however, even when most generously construed, fails to provide any notice to the defendants of the assertion of such a claim.  I have therefore not addressed the viability of an FTCA claim of negligence based upon the circumstances described in plaintiff's amended complaint.

[5]     Because both parties have provided evidentiary submissions, including affidavits, for the court's consideration, I recommend that defendants' motion be treated as one for summary judgment, rather than as merely addressing the facial sufficiency of plaintiff's amended complaint.

Civil Procedure.  Under that provision, summary judgment is warranted

when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986);

*Security Insurance Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391

F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this

inquiry, if "it might affect the outcome of the suit under governing law."

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys*, 426 F.3d

at 553 (citing *Anderson*).  A material fact is genuinely in dispute "if the

evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though

*pro se* plaintiffs are entitled to special latitude when defending against

summary judgment motions, they must establish more than merely

"metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but*

*see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting

obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.[6]  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Insurance*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright*, 132 F.3d at 137-

---

[6]     The court is significantly handicapped in its analysis of the pending summary judgment motion in view of plaintiff's failure to respond to defendants' statement, pursuant to Northern District of New York Local Rule 7.1(a)(3), regarding material facts not in dispute.  In light of the uncertainty as to whether the court would treat defendants' motion as one for summary judgment, however, and in view of plaintiff's *pro se* status, I recommend that this deficiency be overlooked and that the record be considered, and interpreted in a light most favorable to the plaintiff, to determine whether, indeed, any triable issues of material fact exist and preclude the entry of summary judgment.

38.  Summary judgment is inappropriate where "review of the record reveals

sufficient evidence for a rational trier of fact to find in the [non-movant's]

favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)

(citation omitted); *see also Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511

(summary judgment is appropriate only when "there can be but one

reasonable conclusion as to the verdict.").

     B.     <u>Dismissal of Plaintiff's Claims Against the Defendants in Their
Official Capacities</u>

The defendants named in both plaintiff's original complaint and in his

later filed, amended complaint, are sued both individually and in their official

capacities.  In their motion, defendants seek dismissal of plaintiff's claims

against them to the extent they are named as federal employees, based

upon sovereign immunity.

As a sovereign, the United States, including its various agencies, is

immune from suit absent, and then only to the extent of, its consent to be

sued.  *United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349, 1351

(1980) (citing *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct.  767,

769-70 (1941)); *Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir.

1988) (citing *Sherwood*).  A party who sues the United States asserting a

waiver of sovereign immunity bears the burden of establishing a clear and

unequivocal waiver or consent to be sued.  *Makarova v. United States*, 201

F.3d 110, 113 (2d Cir. 2000).

In this instance there is no basis to conclude that the United States

has waived its sovereign immunity as to damage claims for constitutional

torts.  *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d

Cir. 1994).  Accordingly, plaintiff may not maintain his damage claims

against the defendants in their official capacities, and such claims are

subject to dismissal.  *Davis v. United States Dept. of Justice*, 204 F.3d 723,

726 (7th Cir. 1999) (sovereign immunity bars suits brought under 42 U.S.C.

§§ 1985(3) and 1986 against federal employees in their official capacities).

*Longshore-Pizer v. State of Connecticut*, No. Civ.A. 3:04-CV-1601, 2005 WL

2253603, at *3 (D. Conn. Sept. 13, 2005) (sovereign immunity bars suits

under sections 1983 and 1985 against state employees in her official

capacity for damages).  Although plaintiff's complaint, as amended, appears

to seek only monetary relief, however, it is possible that should a court find

merit in his constitutional claims the issuance of equitable relief could be

deemed appropriate.  *Longshore-Pizer*, 2005 WL 2253603, at *3.  Such

relief could be properly awarded against the defendants in their official

capacities, and would not be precluded by sovereign immunity.  *Id.*

14

Accordingly, I recommend dismissal only of plaintiff's claim for damages against the defendants in their official roles, but that they remain as parties in the action in their capacities as BOP employees for the limited purpose of being subject to any equitable relief which may be granted in the case.

>   C.   Merits of Plaintiff's Claims

>>   1.   Legal Bases for Plaintiff's Claims

In his complaint, as amended, plaintiff characterizes his claims as having been brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.  Each of these sections, while addressing civil rights violations, is distinct, with varying degrees of applicability to circumstances such as those now presented.

The first of those sections, 42 U.S.C. § 1983, provides in pertinent part that

>   [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  As the statute on its face suggests, it is addressed to the

deprivation, under color of state law, of civil rights, and thus has no

applicability in cases such as this where claims are asserted against federal

employees who are not alleged to have been acting in concert with state

actors.  *Bivens v. Six Unknown Named Agents of Federal Bureau of*

*Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971); *Peck v. United States*, 470

F. Supp. 1003, 1007 (S.D.N.Y. 1979).  The courts have, however,

recognized the existence of a federal analog to section 1983 in cases where

a plaintiff alleges a deprivation of his or her constitutional rights at the hands

of a federal employee.  *Carlson v. Green*, 446 U.S. 14, 18-25, 100 S. Ct.

1468, 1474-75 (1980).  Plaintiff's claims under section 1983 are therefore

subject to dismissal, and will be considered instead as having been brought

pursuant to *Bivens* to redress constitutional violations committed by the

defendants.

The wordings of 42 U.S.C. §§ 1985(3) and 1986 are distinctly different

from section 1983, and are not dependent for their applicability upon a

showing of action taken under color of state law.  Accordingly, federal

officials and employees may be liable in their individual capacities for

violation of those provisions.  *Peck*, 470 F. Supp. at 1012; *but see Vincent v.*

*Dept. of Health & Human Servs.*, 600 F. Supp.110, 111-12 (D. Nev. 1984)

16

(sovereign immunity has not been waived and thus precludes a suit brought under 42 U.S.C. § 1986 against a federal official acting under color of federal law).

Despite the availability under those sections of damage claims against the defendants in their individual capacities, plaintiff's claims under sections 1985(3) and 1986 lack merit.[7]  To sustain a cause of action for conspiracy to violate civil rights under section 1985(3), a plaintiff must allege and demonstrate that defendants acted with racial or other class based animus in conspiring to deprive the plaintiff of his or her civil rights.  *United Brotherhood of Carpenters & Joiners, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 834-39, 103 S. Ct. 3352, 3359-61 (1983); *Patterson v. County of Oneida, New York*, No. 5:00-CV-1940, 2002 WL 31677033 at *4 (N.D.N.Y. 2002) (Hurd, J.), *aff'd in relevant part*, 375 F.3d 206 (2d Cir. 2004); *Benson v. United States*, 969 F. Supp. 1129, 1135-36 (N.D. Ill. 1997) (citing, *inter alia*, *United Brotherhood*).  In response to defendants' motion, plaintiff has adduced no evidence to show that defendants have been motivated by race or other class-based animus in their enforcement of the smoking policies at

---

[7]     Although plaintiff has attempted to assert claims under 42 U.S.C. § 1985(1) and (2), those subsections have no applicability to the facts alleged in his complaint.

issue in the case.  Plaintiff's claims under section 1985(3) are therefore

legally deficient, and subject to dismissal as a matter of law.[8]  *Posr v. Court*

*Officer Shield #203*, 180 F.3d 409, 419 (2d Cir. 1999).  And, since "a § 1986

claim must be predicated upon a valid § 1985 claim[,]" *Mian v. Donaldson,*

*Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)*,* plaintiff's

section 1986 claim must therefore fail as well.  *Posr*, 180 F.3d at 419;

*Patterson*, 2002 WL 31677033, at *4 (citing *Mian*); *Baines*, 288 F. Supp.2d

at 394-95.

In light of the foregoing, plaintiff's three causes of action will be

analyzed as asserting a claim under *Bivens* for deprivation of his

constitutional rights.

### 2.  Merits of Plaintiff's Eighth Amendment ETS Claim

Central to the claims in this action is plaintiff's contention that by

exposing him to unhealthy and unacceptable levels of ETS, defendants

have subjected him to cruel and unusual punishment, in violation of the

---

[8]      Plaintiff's section 1985(3) cause of action is also potentially barred by the "intracorporate conspiracy" doctrine, which has been applied to preclude such claims "where the conspiratorial conduct challenged is essentially a single act by a single governmental body acting exclusively through its own officers, each acting within the scope of his or her official capacity[.]" *See Baines v. Masiello*, 288 F. Supp.2d 376, 394 (W.D.N.Y. 2003).

Eighth Amendment.[9]  Defendants seek dismissal of plaintiff's Eighth
Amendment claims as a matter of law.

    The Eighth Amendment's prohibition of cruel and unusual punishment
encompasses punishments that involve the "unnecessary and wanton
infliction of pain" and are incompatible with "the evolving standards of
decency that mark the progress of a maturing society."  *Estelle v. Gamble,*
429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v.
Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia,
Estelle*).  While the Eighth Amendment does not mandate comfortable
prisons, neither does it tolerate inhumane ones; thus the conditions of an
inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v.
Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v.
Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

    A claim alleging that prison conditions violate the Eighth Amendment
must satisfy both an objective and subjective requirement – the conditions

---

        [9]     Plaintiff also asserts a substantive due process claim under the Fifth
Amendment which, *inter alia*, prohibits an abuse of executive power "so ill-conceived or
malicious that it 'shocks the conscience.'" *Miller v. City of Philadelphia*, 174 F.3d 368,
375 (3d Cir. 1999) (quoting, *inter alia*, *County of Sacramento v. Lewis*, 523 U.S. 833,
846-47, 118 S. Ct. 1708, 1717 (1998)).  Although analysis of Fifth Amendment
substantive due process claims varies depending upon the circumstances presented,
for all practical purposes the plaintiff's due process claim in this instance is co-
extensive with, and subject to the same analysis as, plaintiff's Eighth Amendment
cause of action.  *See Peddle v. Sawyer*, 64 F.Supp.2d 12, 17 (D. Conn. 1999).

must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference". *See Leach v. Dufrain,* 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. & Homer, M.J.); *see also, generally, Wilson*, 501 U.S. 294, 111 S. Ct. 2321.

a)   <u>Objective Element</u>

Not every injury or deprivation experienced by a prison inmate rises to a level of constitutional significance under the Eighth Amendment, thereby justifying federal intervention – "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities'". *See Farmer,* 511 U.S. at 834, 114 S. Ct. at 1977 (quoting *Rhodes*, 452 U.S. at 347, 101 S. Ct. at 2399).

In analyzing Eighth Amendment ETS exposure claims applying now-familiar Eighth Amendment jurisprudence, courts have differentiated between those alleging present harm due to ETS exposure, and those claims alleging future harm caused by exposure to secondhand smoke. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001); *Henderson v.*

20

*Sheahan*, 196 F.3d 839, 845-47 (7th Cir. 1999), *cert. denied*, 530 U.S. 1244, 120 S. Ct. 2691 (2000); *Oliver v. Deen*, 77 F.3d 156, 159-60 (7th Cir. 1996); *Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995); *McPherson v. Coombe*, 29 F. Supp.2d 141, 145 (W.D.N.Y. 1998); *see also*, *e.g.*, *Warren v. Keane*, 196 F.3d 330, 333 (2d Cir. 1999).

i)   Present Injury

Like other Eighth Amendment claims of deliberate indifference to medical needs, plaintiff's claim of ETS exposure that endangers his existing health is governed by *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976). *Alvarado*, 267 F.3d at 651; *see also Davidson v. Coughlin*, 920 F. Supp. 305, 309 (N.D.N.Y. 1996) (McAvoy, C.J.).  To state a claim under the objective prong of the *Farmer* test for present injury caused by ETS exposure, a plaintiff must show that ETS caused him or her to suffer serious adverse health consequences.[10]  *Henderson*, 196 F.3d at 845.  A serious medical need or injury is one that a physician has diagnosed as requiring treatment, or a medical condition that is so obvious that even a lay person would recognize the need for treatment.  *Henderson*, 196 F.3d at 846.

_____

[10]   In certain circumstances, exposure to ETS can also give rise to a cognizable constitutional claim when it has the known effect of aggravating existing medical conditions.  *E.g.*, *Alvarado*, 267 F.3d at 651 (plaintiff stated Eighth Amendment claim under *Estelle* when he submitted documentation showing that his severe chronic asthma was made worse by ETS).

In this case, plaintiff asserts – and his medical records substantiate – that he has suffered from asthma and related symptomology which, he claims, neither runs in his family nor was experienced prior to his arrival at FCI Ray Brook.  It is true that none of plaintiff's medical records submitted suggest a link between plaintiff's exposure to ETS and his condition, either as a cause of or having exacerbated his existing asthma condition.  Indeed, in only one instance did plaintiff relate to medical personnel his belief that the asthma and related symptoms were attributable to his exposure to secondhand smoke.  *See* Lee Decl. (Dkt. No. 37) Doc. 4, at 19.

The record also reflects that plaintiff's asthma condition was extensively treated by medical officials at FCI Ray Brook and well controlled, and that he was provided medication, including several inhalers, to assist him with respect to that condition.

In several cases bearing some similarity to the instant action, courts have rejected Eighth Amendment ETS causes of action based upon claims of resulting onset or aggravation of existing asthma.  *See*, *e.g.*, *Oliver*, 77 F.3d at 158-59 (no serious injury when prison doctor said plaintiff's asthma was never life-threatening and required no outside hospitalization); *Blyden v. Bartlett*, No. 95-CV-1071, 1997 WL 584308, at *2 (W.D.N.Y. Sept. 9,

1997) (no serious injury when no medical records to substantiate causation of or aggravation of allergies due to ETS exposure); *Jackson v. Berge*, 864 F. Supp. 873, 881-82 (E.D. Wis. 1994) (no serious injury when plaintiff's self-diagnosis of asthma and chest pains not substantiated by physician's diagnosis, expert opinion, or competent evidence); *compare Alvarado*, 267 F.3d at 651 (summary judgment properly denied when plaintiff submitted records showing severe asthma since childhood that resulted in multiple trips to the emergency room while incarcerated); *see also Davidson*, 920 F. Supp. at 309 (plaintiff's allegation that smoke aggravated existing allergies unsubstantiated).  The record in this case, however, when construed in a light most favorable to the plaintiff, presents a distinctly different situation from the circumstances at issue in those actions.  Plaintiff asserts that prior to his arrival at FCI Ray Brook, he did not experience asthma.  Plaintiff further alleges, and those allegations are substantiated through affidavits of fellow inmates, that while at FCI Ray Brook he has been exposed to ETS. The records additionally reflect extensive complaints of and symptomology associated with asthma, resulting in treatment through the administering of inhalers and other prescription medication.  Lastly, though the record appears to be incomplete and does not contain any records associated with

the ensuing visit, plaintiff's medical records reflect that on January 28, 2004

he was found unconscious while being processed into the facility's SHU

unit, resulting in his being taken to a local hospital emergency room for

diagnosis and treatment.  *See* Lee Decl. (Dkt. No. 37) Doc. 4, at 6.  Plaintiff

attributes this incident to exposure to cigarette smoke and his resulting

respiratory difficulties.  *See* Plaintiff's Statement of Material Facts (Dkt. No.

13) at 1.

Under these circumstances, and in view of evidence suggesting that

plaintiff was exposed to ETS despite his known asthma condition, I am

unable to say that no reasonable factfinder could conclude plaintiff's Eighth

Amendment rights were violated based upon past and present harm

associated with exposure to ETS.  *Alvarado*, 267 F.3d at 651; *Henry v.*

*Melching*, No. 1:03CVF5255A, 2005 WL 1828817, at \*11-\*12 (E. D. Cal.

July 26, 2005) (summary judgment denied when defendants knew of

plaintiff's asthma but failed to enforce non-smoking policy in plaintiff's

presence and other inmates provided declarations as to the high level of

smoke); *Gill v. Smith*, 283 F.Supp.2d 763, 769 (N.D.N.Y. 2003) (Scullin, C.J.

& DiBianco, M.J.) (summary judgment denied when defendant allegedly

smoked in plaintiff's presence despite non-smoking policy and knew of

plaintiff's asthmatic condition).  I therefore recommend denial of the portion of defendants' motion addressing this claim.

ii)     <u>Future Harm</u>

Plaintiff's claim based upon future harm caused by exposure to ETS is governed by *Helling v. McKinney*, in which the Supreme Court squarely held that deliberately indifferent exposure of an inmate to levels of ETS which poses an unreasonable risk of serious damage to future health can run afoul of the Eighth Amendment's proscription on cruel and unusual punishment. 509 U.S. at 35, 113 S. Ct. at 2481-82.  While distinctly similar to the analysis employed to evaluate claims alleging present harm, objective analysis of allegations of future harm based upon ETS exposure is slightly more complicated, in that it involves two components.  As a threshold matter, to prevail on such a claim plaintiff "must show that he [or she]. . . is being exposed to unreasonably high levels of ETS."  509 U.S. at 35, 113 S. Ct. at 2482.  Additionally, as the *Helling* court further explained,

> determining whether [plaintiff's] conditions of
> confinement violate the Eighth Amendment requires
> more than a scientific and statistical inquiry into the
> seriousness of the potential harm and the likelihood
> that such injury to health will actually be caused by
> exposure to ETS.  It also requires a court to assess
> whether society considers the risk that the prisoner
> complaints of to be so grave that it violates

25

> contemporary standards of decency to expose
> *anyone* unwillingly to such a risk.  In other words, the
> prisoner must show that the risk of which he
> complains is not one that today's society chooses to
> tolerate.

509 U.S. at 36, 113 S. Ct. at 2482 (emphasis in original).

In light of *Helling*, plaintiff's allegations of future harm, even when

generously construed, fall far short of satisfying the objective prong of the

*Farmer* test.  Plaintiff's claim that he is housed in a dormitory unit where

smoking is permitted, and that he is subjected to ETS near the dining hall

entrance and exit, as well as his speculation that such circumstances "may

result in catastrophic harm to [him]," *see* Amended Complaint (Dkt. No. 13)

First Cause of Action ¶ 4, simply do not describe conditions which rise to a

level which today's society chooses not to tolerate.  *See Lacroix v. Williams*,

No. 97-CV-0790, 2000 WL 1375737, at *2-*3 (W.D.N.Y. Sept. 21, 2000) (no

serious injury when plaintiff merely alleged residence in a smoking dormitory

and there was no objective medical evidence showing that plaintiff's

symptoms were caused by exposure to ETS).  As the D.C. Circuit observed

in *Scott v. District of Columbia*, *Helling* does not mandate smoke-free

prisons. 139 F.3d 940, 942 (D.C. Cir.), *cert. denied sub nom.*, *Dawson v.*

*District of Columbia*, 525 U.S. 851, 119 S. Ct. 851 (1998).  Accordingly,

plaintiff's Eighth Amendment claims of exposure to ETS based upon a future harm theory lacks merit.

        b.   Subjective Element

It is also readily apparent from the record that in addition to satisfying the objective prong of the *Farmer* test under *Estelle* or *Helling*, plaintiff could establish the level of deliberate indifference necessary to support a cause of action under the Eighth Amendment.  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

As defendants note, over time the BOP has taken increasingly aggressive measures to protect inmates, as well as employers and visitors at BOP facilities like FCI Ray Brook, from exposure to secondhand smoke. Such evidence of ongoing policies, notwithstanding plaintiff's claim that they are not rigidly enforced, somewhat undermines any claim of deliberate indifference.  *See Scott*, 139 F.3d at 944 (citing, *inter alia*, *Helling*, 509 U.S.

27

at 36, 113 S. Ct. at 2482); *Davidson*, 920 F. Supp. at 309.  Yet, plaintiff has submitted evidence which, when considered in a light most favorable to him, suggests that prison workers at FCI Ray Brook have allowed smoking in his presence, despite his known condition.

Based upon the record now before the court, I am therefore unable to find that no reasonable factfinder could conclude plaintiff can meet both the objective and subjective elements of an Eighth Amendment claim for exposure to ETS.  I therefore recommend denial of defendants' motion seeking dismissal of plaintiff's Eighth Amendment claims on the merits.

D.    Personal Involvement

In their motion, defendants argue that even if plaintiff's constitutional claims are facially meritorious, his complaint fails to allege the requisite degree of their personal involvement in those constitutional violations, and the record fails to cure that deficiency.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages.[11] *Wright v. Smith,* 21

---

[11]    Although most of the claims addressing personal involvement have been decided in the context of civil rights claims asserted under 42 U.S.C. § 1983, they apply with equal force to *Bivens* claims such as those now at bar.  *See Van Eck v. Cimahosky*, 329 F.Supp.2d 265, 271-72 (D. Conn. 2004); *Robinson v. United States Bureau of Prisons*, 244 F. Supp.2d 57, 63-64 (N.D.N.Y. 2003) (Hurd, J.)

F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d

880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d

Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to

recover from a defendant for a constitutional deprivation, a plaintiff must

show some tangible connection between the violation alleged and that

particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.

1986).

     A supervisor cannot be liable for damages in a *Bivens* action solely by

virtue of being a supervisor – there is no *respondeat superior* liability in such

instances.  *Hernandez v. Keane*, 341 F.3d 137, 144-45 (2d Cir. 2003), *cert.

denied*, 125 S. Ct. 971 (2005); *see also Richardson v. Goord*, 347 F.3d 431,

435 (2d Cir. 2003) (no *respondeat superior* liability in § 1983 action); *Wright*,

21 F.3d at 501 (same).  A supervisory official can, however, be liable if 1)

the supervisor directly participated in the challenged conduct; 2) the

supervisor, after learning of the violation through a report or appeal, failed to

remedy the wrong; 3) the supervisor created or allowed to continue a policy

or custom under which unconstitutional practices occurred; 4) the supervisor

has been grossly negligent in managing the subordinates who caused the

unlawful event; or 5) the supervisor failed to act on information indicating

that unconstitutional acts were occurring.  *Hernandez v*, 341 F.3d at 144-45;

*Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781

F.2d 319, 323-24 (2d Cir. 1986).

The gist of plaintiff's complaint is that while there may be a smoking

policy in place within the BOP, and being implemented at FCI Ray Brook,

that policy is not enforced.  Neither plaintiff's amended complaint nor the

record now before the court, however, reflects direct involvement in this

failure on the part of many of the supervisory BOP employees named as

defendants, including Kathleen H. Sawyer, former BOP Director; Harley G.

Lappin, current BOP Director; Michael K. Nalley, former Warden at FCI Ray

Brook; C. Chester, Assistant Warden; Sherrod, Assistant Warden;

Copenhaver, Assistant Warden; and Fink, a BOP Safety Employee.  Since

there is no *respondeat superior* liability under *Bivens*, and plaintiff has

neither pleaded nor proven an affirmative act or omission on the part of

those individual defendants, they are subject to dismissal from the action.

*Brown v. Grabowski*, 922 F.2d 1097, 1119-21 (3d Cir. 1990), *cert. denied*,

501 U.S. 1218 (1991); *Baker v. Monroe Township*, 50 F.3d 1186, 1190-91

(3d Cir. 1995); *see also Richardson*, 347 F.3d at 435 ("[M]ere 'linkage in the

prison chain of command' is insufficient to implicate a state commissioner of

corrections or a prison superintendent in a § 1983 claim.") (citations omitted); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (dismissal appropriate where plaintiff does no more than allege that defendant was in charge of prison); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (same).

Plaintiff's amended complaint does attribute particular acts or omissions to three of the named defendants, including Harley Smith, a Unit Counselor who is alleged to have approved the housing of smoking and non-smoking inmates together, as well as defendants Connie Copeland, a Unit Manager, and Juliette Hurley, a Case Manager, both alleged to have "upheld" that practice.  *See* Amended Complaint (Dkt. No. 13) ¶ 23.  These allegations, accepted as true and with all inferences drawn and ambiguities resolved in plaintiff's favor, are sufficient to implicate the personal involvement of those three named defendants.  *George v. McAdory*, No. Civ. 04-937, 2005 WL 1653752, at *1 (S.D. Ill. July 13, 2005) (plaintiff stated nonfrivolous claim against prison officials for failing to assign him to prison nonsmoking unit despite his asthma attacks).

While defendants also advocate for dismissal of plaintiff's claims against Warden Drew and BOP Northeastern Regional Director Ray based

31

upon lack of personal involvement, the record reflects the existence of triable fact issues regarding the level of their awareness of and involvement in the constitutional violations alleged.  Twice plaintiff has availed himself of a procedure for requesting an administrative remedy to address his claim of ETS exposure.  *See* Lee Decl. (Dkt. No. 37) Docs. Nos. 2, 3.  In each instance the request was reviewed and denied at the facility level by Warden Drew, and regionally by defendant Ray.  *See id.*  The participation of those two defendants in the administrative grievance process sufficiently implicates their personal involvement in the constitutional violations alleged to avoid the dismissal of plaintiff's claims against them at this juncture. *Walker v. Pataro*, No. 99CIV.4607, 2002 WL 664040, at *13-*14 (S.D.N.Y. Apr. 23, 2002); *McPherson*, 29 F. Supp.2d at 145.

In sum, since neither plaintiff's complaint nor the record discloses any basis for liability on the part of defendants Sawyer, Lappin, Chester, Sherrod, Copenhaver, Fink or Baldwin, I recommend dismissal of plaintiff's claims as against those defendants for lack of personal involvement.

D.    Qualified Immunity

In addition to seeking dismissal on the merits, defendants have also asserted qualified immunity as a basis for dismissal of plaintiff's claims

against them.

Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known*." Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  Accordingly, governmental officials sued for damages "are entitled to qualified immunity if (1) their actions did not violate clearly established law, or (2) it was objectively reasonable for them to believe that their actions did not violate such law." *Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999) (citing *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996)); *see also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000).  The law of qualified immunity seeks to strike a balance between overexposure of government officials to lawsuits for violations based upon abstract rights and an unduly narrow view which would insulate them from liability in connection with virtually all discretionary decisions.  *Warren*, 196 F.3d at 332; *see also Locurto v. Safir*, 264 F.3d 154, 162-63 (2d Cir. 2001).

In *Warren v. Keane* the Second Circuit addressed the question of a defendant's eligibility for qualified immunity in an ETS inmate exposure case.  196 F.3d 330 (2d Cir. 1999).  The plaintiffs in that case, each of

which at one point had been confined within the Sing Sing Correctional
Facility, complained that levels of ETS in the cells and common areas of the
facility, in combination with poor ventilation, created serious long term health
risks, and that by exposing plaintiffs to those conditions, defendants violated
their Eighth Amendment rights.  *Id.* at 332.  The defendants moved for
summary judgment on the basis of qualified immunity and, in the face of a
district court decision denying that motion, took an interlocutory appeal to
the Second Circuit.  *Id.*  In a concise opinion authored by Circuit Judge John
M. Walker, Jr., the Second Circuit observed in *Warren* that in view of the
Supreme Court's decision in *Helling v. McKinney*, 509 U.S. 25, 113 S. Ct.
2475 (1993), it was clearly established as of the date of that decision that
the Eighth Amendment prohibits deliberate indifference to an inmate's
exposure to levels of ETS which pose an unreasonable risk of future harm
to the prisoner's health.[12]  *Warren*, 196 F.3d at 332-33; *see also Alvarado*,
267 F.3d at 652; *Bartlett v. Pearson*, No. 1:04CV1293, 2005 WL 3535035,
at *2 (E.D. Va. Dec. 13, 2005).  The *Warren* court also observed that while

---

[12]     The *Warren* court also noted that even before *Helling* a plaintiff
possessed a right to be free from deliberate indifference to serious medical needs with
respect to *existing* health conditions, which dated back to 1976 in *Estelle v. Gamble*,
429 U.S. 97, 97 S. Ct. 285 (1976)*.  Warren*, 196 F.3d at 333; *see also Alvarado*, 267
F.3d at 652.  A more complete discussion of the effects of *Helling* and *Estelle* on ETS
exposure claims is set forth elsewhere.  *See* pp. 18-28, *ante*.

there were facts in dispute, plaintiff's allegations, if believed, described an environment such that the court could not say as a matter of law "that any prison official reasonably could have believed that the alleged severe exposure to ETS did not violate the plaintiffs' Eighth Amendment rights." *Warren*, 196 F.3d at 333.

When the facts alleged by plaintiff Colon, and those established in the record, are judged against this standard, I am unable to conclude that no reasonable factfinder could find that it was objectively unreasonable for defendants to believe that their acts did not violate Eighth Amendment rights. To a significant extent, the facts necessary to adjudicate defendants' qualified immunity defense are the same as those upon which plaintiff's claims depend, and which I have previously found are disputed and cannot be resolved on motion for summary judgment. In any event, I am unable to say that defendants' exposure of plaintiff to ETS, knowing that he has been diagnosed as suffering from asthma, did not violate plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. *Alvarado,* 267 F.3d at 652-53.

IV.   <u>SUMMARY AND CONCLUSION</u>

Plaintiff in this case complains of being exposed in areas at FCI Ray

35

Brook, including both outside and indoor portions of the facility, to ambient,

second hand smoke.  Addressing the future exposure component of

plaintiff's  claim, I find no evidence in the record to suggest that those levels

to which plaintiffs and other non-smoking inmates were exposed at FCI Ray

Brook are so unreasonably dangerous as to rise to a level which no member

of civilized society should be expected to tolerate.  I further find, however,

that while the defendants claim to have been proactive in addressing the

dangers of secondhand smoke, the record, when construed in a light most

favorable to the plaintiff, suggests that defendants have allowed plaintiff to

be exposed to ETS despite his known asthma condition, thereby precluding

the entry of summary judgment dismissing Colon's claims on the merits, and

additionally on the grounds of qualified immunity.  I further find, however,

that with the exception of defendants Drew, Ray, Smith, Copeland and

Hurley, neither plaintiff's complaint nor the record discloses defendants'

personal involvement in the constitutional violations alleged, and thus

recommend dismissal of plaintiff's claims against those defendants.[13]

---

[13]     On December 27, 2005 an application by the plaintiff to supplement his
complaint in order to submit additional documentary evidence was filed. Dkt. No. 50. I
have reviewed the additional evidence submitted, which relates to a request submitted
in or about July of 2003 by the plaintiff seeking informal resolution of his grievance
related to the non-enforcement of the no smoking policy at FCI Ray Brook, and find
that it does not provide a basis to alter the analysis set forth above.  Plaintiff's motion

36

Based upon the foregoing, it is hereby

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No. 37) be GRANTED in part, and plaintiff's Eighth Amendment claims of future exposure to ETS and all claims as against defendants Sawyer, Lappin, Chester, Sherrod, Copenhaver, Fink and Baldwin DISMISSED, but otherwise DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

---

which is subject to rejection based upon the failure to conform to this court's local rules which require the submission of a fully integrated pleading with any motion for leave to amend or to supplement, *see* N.Y.D.L.R.7.1(a)(4), will be rendered academic in the event of acceptance of the foregoing recommendation regarding disposition of defendants' motion.

It is further ORDERED that the Clerk of the Court serve a copy of this

report and recommendation upon the parties by regular mail.

Dated:      February 1, 2006
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\ISSUES\civil rights\Eighth Amendment\conditions of confinement\secondhand smoke\colonreprec.wpd

38