IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

FELIX ANTONIO COLON,

                              Plaintiff,

        -v.-                                              9:03-CV-1018
                                                          (LEK)(DEP)

KATHLEEN H. SAWYER, *et al.*,

                              Defendants.

-----------------------------------------------------------------

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

FELIX ANTONIO COLON, *pro se*

FOR DEFENDANT:

HON. GLENN T. SUDDABY          BARBARA D. COTTRELL, ESQ.
United States Attorney          Assistant U.S. Attorney
James T. Foley U.S. Courthouse
445 Broadway
Room 218
Albany, NY 12207-2924

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____ REPORT AND RECOMMENDATION

        Plaintiff Felix Antonio Colon, a federal prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

against various employees of the federal Bureau of Prisons ("BOP"),

originally sued both individually and in their official capacities, claiming

deprivation of his constitutional rights.[1]  Plaintiff, a diagnosed asthmatic,

alleges that as a result of defendants' actions, and in particular their laxity

in enforcing BOP and local smoking policies, he was exposed to

environmental tobacco smoke ("ETS"), or secondhand smoke, while

incarcerated at the Ray Brook Federal Correctional Institution ("FCI Ray

Brook"), and that as a result he has suffered adverse physical

consequences.  Colon asserts that his exposure to ETS represents cruel

and unusual punishment, in violation of his rights secured under the

Eighth Amendment, as well as a deprivation of his Fifth Amendment

substantive due process rights.

At an early stage of the proceedings defendants moved seeking

dismissal of plaintiff's claims for failure to state a legally cognizable claim

or, alternatively, for the entry of summary judgment in their favor

dismissing his complaint as a matter of law.  That motion was granted in

part, the court finding that plaintiff's claims based upon present and future

exposure to unreasonable levels of ETS were legally deficient, but

---

[1]     Plaintiff's claims against the defendants in their official capacities have been dismissed by the court.  *See* Dkt. No. 51 at 15 and Dkt. No. 55.

otherwise denied based upon the existence of triable issues of material

fact, particularly relating to his claim of past exposure to smoke.  Following

discovery, the remaining defendants in the action again moved for

summary judgment seeking dismissal of plaintiff's claims as legally

deficient as a matter of law, with several of these defendants additionally

asserting their entitlement to qualified immunity.  For the reasons set forth

below I find, based upon the evidence now before the court, that no

reasonable factfinder could conclude the majority of the defendants

named in Colon's complaint were aware of and disregarded an excessive

risk to his health or safety, and therefore recommend that defendants'

motion be granted except as it relates to defendant Drew who, a

reasonable factfinder could conclude, was personally involved in the

conduct giving rise to plaintiff's remaining constitutional claim.

I.      BACKGROUND

        Plaintiff is a federal inmate entrusted to the custody of the BOP as a

result of a drug conviction from the Eastern District of Virginia.  Lee Decl.

(Dkt. No. 37) Doc. 1.  At the times relevant to the claims asserted in his

complaint plaintiff was an inmate at FCI Ray Brook, and was housed either

in the Genesee Unit, which consists of variously configured cells

accommodating between two and twelve inmates, or at the facility's

special housing unit ("SHU").  Amended Complaint (Dkt. No. 13) ¶ 17;

Darrah Decl. (Dkt. No. 37) ¶ 7 & Doc. 14.  While in the Genesee Unit,

plaintiff was assigned at different times to ten, six, four and two person

cells.  Darrah Decl. (Dkt. No. 37) ¶ 7.

Plaintiff, a non-smoker, was diagnosed with and treated for asthma

during the period of his incarceration at FCI Ray Brook, dating back to his

first reported complaint of respiratory difficulties on April 10, 2003.  *See*

Lee Decl. (Dkt. No. 37) Doc. 4, at 19.  On that occasion, Colon complained

to prison medical officials of eye irritation, dizziness, and fatigue attributed

by him to his exposure to cigarette smoke.  *See id.*

Since that initial encounter in April of 2003, plaintiff has presented to

medical personnel at FCI Ray Brook on several occasions complaining of

various symptomology including shortness of breath, fatigue, chest and

musculoskeletal pain, and migraine headaches.  *See generally id.*, Doc. 4.

Plaintiff has been diagnosed as suffering from asthma, a condition which

he claims neither runs in his family nor was experienced by him prior to his

arrival at FCI Ray Brook, and has been treated in various ways including

through the use of Albuterol and Triamcinolone inhalers.  *Id.*  According to

4

the plaintiff, he is required to use his Triamcinolone inhaler daily, as

prescribed, and his Albuterol inhaler as often as two or three times daily.

Lee Decl. (Dkt. No. 37) Doc. 4, at 3-4.

Plaintiff's claims, which stem from attribution of his physical

difficulties to ETS exposure, implicate various BOP policies and practices,

both nationwide and at the facility level.  A smoking policy was

implemented by the BOP in August of 1994, when Program Statement

1640.03, addressing the designation of smoking and non-smoking areas,

went into effect.  *See* Darrah Decl. (Dkt. No. 37) ¶ 4 & Doc. 1; *see also*

Drew Decl. (Dkt. No. 72-4) ¶ 2 and Exh. 1.  At the time of plaintiff's

admission into FCI Raybrook on May 23, 2002, the facility operated under

Program Statement 1640.03 and Institution Supplement RBK 1640.3A,

entitled "Smoking/No Smoking Areas," and dated August 17, 2000.  Drew

Decl. (Dkt. No. 72-4) ¶ 3 and Exh. 2.  Under that policy, smoking was

prohibited in all areas of the facility unless denoted otherwise by sign

reading "Designated Smoking Area."  *Id.*  At the time, smoking was

allowed within housing areas only in individual cells; the policy provided

that non-smoking inmates would not be housed with smokers as a general

rule, and that in the event of a temporary situation requiring a smoker to

5

be housed with a non-smoker, the cell became a non-smoking cell.  *Id.*

On August 30, 2002, Institution Supplement No. RBK 1640.3B was implemented to clarify the prior institutional policy.  Drew Decl. (Dkt. No. 72-4) ¶ 4 and Exh. 3.  Under that revision, smoking continued to be prohibited in all areas except those with the signed designation otherwise, and was permitted only in two person cells of regular housing units, and then only when both occupants agreed to permit smoking.  *Id.* ¶ 4.  The policy specifically provided that smoking was not permitted in any cells housing more than two inmates.  *Id.*

Effective on July 15, 2004, BOP Program Statement 1640.03 was superseded by a new Program Statement 1640.04, dated March 15, 2004, effectively banning all indoor smoking at BOP facilities, with limited exceptions not applicable in this case.  Drew Decl. (Dkt. No. 72-4) ¶ 5 and Exh. 4; *see also* Darrah Decl. (Dkt. No. 37) ¶ 6 & Doc. 3.  Under Program Statement 1640.04, a facility warden was permitted, in his or her discretion, to permit smoking in clearly identified outside areas.  *Id.*  In response to Program Statement 1640.04, on August 23, 2004 the warden at FCI Ray Brook issued a new Institution Supplement, No. RBK 1640.3C, allowing smoking by both inmates and staff only in designated outdoor

areas, and prohibiting smoking in any inside areas, including housing units themselves.  Drew Decl. (Dkt. No. 72-4) ¶ 5 and Exh. 5; Darrah Decl. (Dkt. No. 37) ¶ 6.

At the heart of this action is controversy regarding the level of enforcement of these smoking policies at FCI Ray Brook.  The changes mandated by the BOP in smoking policies were implemented at FCI on a graduated basis.  Drew Decl. (Dkt. No. 72-4) ¶ 6.  As the facility transitioned to a smoke free environment, Warden Drew provided staff with a certain amount of discretion as to whether to issue a formal disciplinary notice to an inmate for violating the smoking policy, or instead simply to issue a warning.  *Id.*  This approach was taken in order to ameliorate the impact of the transition upon smoking inmates, and thereby to minimize the potential for inmate unrest and corresponding security concerns.  *Id.*

Notwithstanding the somewhat tempered approach taken during the transitional period, the defendants maintain that the BOP and local policies regarding smoking have been enforced at FCI RayBrook, and the Genesee Unit in which Colon has been housed at certain of the relevant times is staffed around the clock with a unit officer who patrols the area to

ensure compliance with all institution rules and regulations, including those regarding smoking.  Darrah Decl. (Dkt. No. 37) ¶ 8.  Both staff members and inmates are reminded periodically, through written memoranda, of the smoking policies in effect at the institution.  *Id.*; *see also* Drew Decl. (Dkt. No. 72-4) Exhs. 6-14.  Violators are either informally reminded of the smoking policies or are the subject of more formal action, including through the issuance of incident reports.  Darrah Decl. (Dkt. No. 37) ¶ 9.  Between the beginning of 2002, the year in which plaintiff arrived at FCI Ray Brook, and the end of 2003, 107 incident reports were administered to inmates for smoking in non-designated areas; twenty-five of those were written for violations occurring in the Genesee Unit.[2]  *Id.*

Plaintiff's assertions regarding the level of enforcement of the existing smoking policies are not at all congruent with those of the defendants.  Plaintiff contends, and has earlier submitted both his declaration to that effect and affidavits from fellow inmates corroborating his claim, that the smoking policy is not faithfully enforced at FCI Ray Brook, a fact which he attributes in part to shortage of staff and overcrowding of inmates as well as poor ventilation.  *See* Dkt. No. 40.

---

[2]    There is no indication in defendants' papers regarding either the potential, or any actual, consequences attendant to such incident reports.

8

According to Colon, inmates are still permitted to smoke in housing units throughout the day and particularly after 8:30 p.m. when, according to him, the units are locked down.  Colon Aff. (Dkt. No. 40) at 8.  Fellow inmates confirm that inmates and staff members are freely permitted to smoke cigarettes throughout the institution, including near entrances to the dining hall and the Genesee Housing Unit.  Dkt. No. 40.  One of those inmates states that he has been permitted to smoke cigarettes freely while in the same room as the plaintiff, without consequence.  *See* Belcher Aff. (Dkt. No. 40) ¶ 12.

II.   <u>PROCEDURAL HISTORY</u>

After exhausting available administrative remedies in an effort to seek redress of his complaints regarding exposure to ETS and enforcement of governing smoking regulations, *see* Lee Decl. (Dkt. No. 37) Docs. 2A, 2B, 2C, 3A, 3B and 3C, plaintiff commenced this action on August 18, 2003, Dkt. No. 1, and on January 9, 2004 filed an amended complaint as a matter of right revising his claims somewhat and adding several defendants to those initially sued.  Dkt. No. 13.  Named as defendants in plaintiff's amended complaint were several BOP employees, including Kathleen H. Sawyer, the agency's former Director; Harley Smith,

a Unit Counselor; Juliette Hurley, a Unit Case Manager; Connie Copeland, a Unit Manager; C. Chester, a BOP Assistant Warden; (first name unknown) Sherrod, also an Assistant Warden; Michael K. Nalley, formerly the Warden at FCI Ray Brook; Harley G. Lappin, current Director of the BOP; D. Drew, who at the time was the new Warden at FCI Ray Brook; (first name unknown) Copenhaver, a BOP Assistant Warden; (first name unknown) Fink, a BOP Safety employee; (first name unknown) Baldwin, a BOP officer; and Mickey E. Ray, the BOP Northeastern Regional Director. *See id.* Plaintiff's amended complaint purported to assert three causes of action, including under 1) 42 U.S.C. § 1983, based upon defendants' failure to supervise and enforce applicable rules and regulations; 2) 42 U.S.C. § 1985(1)-(3), for conspiracy to violate his civil rights, including under the Fifth and Eighth Amendments to the United States Constitution; and 3) 42 U.S.C. § 1986, for failure to prevent a violation of his civil rights under both the United States Constitution and federal law.[3] *Id.*

On December 29, 2004, those defendants who had thus far

---

[3]     In the introduction to his amended complaint, plaintiff also professed to assert claims under 18 U.S.C. §§ 241 and 242.  Those statutes, however, are criminal in nature and do not give rise to civil actions for private enforcement. *Ippolito v. Meisel*, 958 F. Supp. 155, 161 (S.D.N.Y. 1999).  In any event, since plaintiff's reference to those provisions is not reiterated in his three designated causes of action, I will not address them in this report and recommendation.

appeared in the action moved seeking dismissal of plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, the entry of summary judgment pursuant to Federal Rule of Civil Procedure 56 dismissing plaintiff's claims as a matter of law. Dkt. No. 37. In their motion, defendants raised a number of arguments addressing all or some of plaintiff's causes of action, arguing that 1) plaintiff's substantive Fifth Amendment due process violation and Eighth Amendment claims lack merit, and the allegations set forth in his complaint therefore do not rise to a level of constitutional significance; 2) plaintiff may not sue the defendants in their official capacities; 3) plaintiff has failed to allege the requisite personal involvement on the part of the defendants in the constitutional violations alleged; and 4) in any event, defendants are entitled to qualified immunity. Plaintiff responded in opposition to defendants' motion, submitting both an affidavit and memorandum on his behalf and, as was previously noted, affidavits of several fellow inmates at FCI Ray Brook, all of which were filed together on March 3, 2005.[4] Dkt. No. 40.

---

[4] In his opposition to defendants' earlier dismissal motion, plaintiff stated that it was his intention to include a claim in his complaint for negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. Plaintiff's complaint, however, even when most generously construed, fails to provide any notice to the defendants of the assertion of such a claim. I have therefore not addressed the viability of an FTCA

On February 1, 2006 I issued a report and recommendation addressing defendants' motion.  Dkt. No. 51.  After recommending dismissal of plaintiff's claims against the defendants in their official capacities and addressing the precise legal bases for his claims, I recommended dismissal plaintiff's causes of action under 42 U.S.C. §§ 1985 and 1986 based upon the lack of any evidence of race-based bias, leaving only a claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 402 U.S. 388, 91 S. Ct. 1999 (1971) in the place of his cause of action purportedly raised under 42 U.S.C. § 1983.

Turning to plaintiff's ETS claims, deemed to have arisen under the Eighth Amendment, I differentiated between those involving present and future harm based upon ongoing exposure to unhealthy levels of ETS and those involving past exposure by prison officials knowing that he suffers from asthma, a condition caused or aggravated by secondhand smoke. Finding that plaintiff could not meet the future harm test sufficient to support a claim under the Eighth Amendment, including under the Supreme Court's decision in *Helling v. McKinney,* 509 U.S. 25, 113 S. Ct. 2475 (1993), I recommended dismissal of that claim.  I further found,

---

claim of negligence based upon the circumstances described in plaintiff's amended complaint.

12

however, that in view of his allegation of exposure to ETS coupled with a known asthma condition, there exist genuine issues of material fact regarding whether the objective and subjective elements of the Eighth Amendment test, as applied to those circumstances, could be established and therefore recommended denial of summary judgment on that issue.[5] That report and recommendation was adopted in full by order issued by District Judge Lawrence E. Kahn on March 20, 2006.  Dkt. No. 55.

Following discovery, the defendants remaining in the case have filed a renewed motion for summary judgment.  Dkt. No. 72.  In their motion, defendants argue, as a matter of law, that no reasonable factfinder could conclude plaintiff satisfies the subjective element of an ETS claim under the Eighth Amendment, maintaining that in fact, prison officials acted responsibly in implementing smoking restrictions on a graduated basis. *See id.*  Defendants Hurley, Copeland and Smith also argue that they are entitled to qualified immunity, and defendants' Drew and Ray assert that they were not personally involved in the constitutional violations alleged.

---

[5]      Reviewing the record before the court, in light of defendants' motion, in my report and recommendation I found the lack of any showing of personal involvement in the exposure on the part of seven of the named defendants, including defendants Kathleen Sawyer, Harley G. Lappin, C. Chester, Assistant Warden Sherrod, Assistant Warden Copenhaver, Unit Counselor Fink and Safety Officer Baldwin, and thus also recommended dismissal of all claims against them.  Dkt. No. 51 at 28-32.

With the filing of a brief and supporting papers by plaintiff in opposition to the motion, Dkt. No. 73, defendants' motion for summary judgment is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if "it might affect the outcome of the suit under governing law."  *Anderson*,

477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.[6]  *Anderson*, 477

---

[6]      The court is significantly handicapped in its analysis of the pending summary judgment motion in view of plaintiff's failure to respond to defendants' statement, pursuant to Northern District of New York Local Rule 7.1(a)(3), regarding material facts not in dispute.  In light of the uncertainty as to whether the court would treat defendants' motion as one for summary judgment, however, and in view of plaintiff's *pro se* status, I recommend that this deficiency be overlooked and that the record be considered, and interpreted in a light most favorable to the plaintiff, to determine whether, indeed, any triable issues of material fact exist to preclude the entry of summary judgment.

U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright*, 132 F.3d at 137-38.  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Merits of Plaintiff's Eight Amendment ETS Claim

While my prior report and recommendation outlined in detail the legal landscape surrounding plaintiff's ETS claims, those principles serve as a useful backdrop to the court's decision, and therefore bear repeating. Central to the claims in this action is plaintiff's contention that by exposing

16

him to unhealthy and unacceptable levels of ETS, defendants have subjected him to cruel and unusual punishment, in violation of the Eighth Amendment.[7]  Defendants seek dismissal of plaintiff's Eighth Amendment claims as a matter of law.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus, the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S.

---

[7]      Plaintiff also asserts a substantive due process claim under the Fifth Amendment which, *inter alia*, prohibits an abuse of executive power "so ill-conceived or malicious that it 'shocks the conscience.'" *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47, 118 S. Ct. 1708, 1717 (1998)).  Although analysis of Fifth Amendment substantive due process claims varies depending upon the circumstances presented, for all practical purposes the plaintiff's due process claim in this instance is co-extensive with, and subject to the same analysis as, plaintiff's Eighth Amendment cause of action.  *See Peddle v. Sawyer*, 64 F. Supp. 2d 12, 17 (D. Conn. 1999).

337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference".  *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. & Homer, M.J.); *see also*, *generally*, *Wilson*, 501 U.S. 294, 111 S. Ct. 2321.

### 1)    Objective Element

Not every injury or deprivation experienced by a prison inmate rises to a level of constitutional significance under the Eighth Amendment, thereby justifying federal intervention; "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities'".  *See Farmer,* 511 U.S. at 834, 114 S. Ct. at 1977 (quoting *Rhodes*, 452 U.S. at 347, 101 S. Ct. at 2399).

In analyzing Eighth Amendment ETS exposure claims applying now-familiar Eighth Amendment jurisprudence, courts have differentiated

between those alleging present harm due to ETS exposure, and those claims alleging future harm caused by exposure to secondhand smoke. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001); *Henderson v. Sheahan*, 196 F.3d 839, 845-47 (7th Cir. 1999), *cert. denied*, 530 U.S. 1244, 120 S. Ct. 2691 (2000); *Oliver v. Deen*, 77 F.3d 156, 159-60 (7th Cir. 1996); *Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995); *McPherson v. Coombe*, 29 F. Supp. 2d 141, 145 (W.D.N.Y. 1998); *see also*, *e.g.*, *Warren v. Keane*, 196 F.3d 330, 333 (2d Cir. 1999).   Since all that remains of plaintiff's claims are those related to past injury, I will discuss only this aspect of the objective element of the claim.

Like other Eighth Amendment claims of deliberate indifference to medical needs, plaintiff's claim of ETS exposure that endangers his existing health is governed by *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976).  *Alvarado*, 267 F.3d at 651; *see also Davidson v. Coughlin*, 920 F. Supp. 305, 309 (N.D.N.Y. 1996) (McAvoy, C.J.).  To state a claim under the objective prong of the *Farmer* test for past injury caused by ETS exposure, a plaintiff must show that ETS caused him or her to suffer serious adverse health consequences.[8]  *Henderson*, 196 F.3d at 845.  A

---

[8]      In certain circumstances, exposure to ETS can also give rise to a cognizable constitutional claim when it has the known effect of aggravating existing

serious medical need or injury is one that a physician has diagnosed as requiring treatment, or a medical condition that is so obvious that even a lay person would recognize the need for treatment. *Henderson*, 196 F.3d at 846.

In this case, plaintiff asserts – and his medical records substantiate – that he has suffered from asthma and related symptomology which, he claims, neither runs in his family nor was experienced prior to his arrival at FCI Ray Brook.  It is true that none of plaintiff's medical records now before the court suggest a link between plaintiff's exposure to ETS and his condition, either as a cause of or having exacerbated his existing asthma condition.  Indeed, in only one instance did plaintiff relate to medical personnel his belief that the asthma and related symptoms were attributable to his exposure to secondhand smoke.  *See* Lee Decl. (Dkt. No. 37) Doc. 4, at 19.  The record also reflects that plaintiff's asthma condition was extensively treated by medical officials at FCI Ray Brook and well-controlled, and that he was provided medication, including several inhalers, to assist him in coping with that condition.

––––––––––––––––––––

medical conditions.  *E.g.*, *Alvarado*, 267 F.3d at 651 (plaintiff's complaint stated Eighth Amendment claim under *Estelle* when he submitted documentation showing that his severe chronic asthma was made worse by ETS).

In several cases bearing some similarity to the instant action, courts have rejected Eighth Amendment ETS causes of action based upon claims of resulting onset or aggravation of existing asthma.  *See*, *e.g.*, *Oliver*, 77 F.3d at 158-59 (no serious injury when prison doctor said plaintiff's asthma was never life-threatening and required no outside hospitalization); *Blyden v. Bartlett*, No. 95-CV-1071, 1997 WL 584308, at *2 (W.D.N.Y. Sept. 9, 1997) (no serious injury when no medical records substantiated causation of or aggravation of allergies due to ETS exposure); *Jackson v. Berge*, 864 F. Supp. 873, 881-82 (E.D. Wis. 1994) (no serious injury when plaintiff's self-diagnosis of asthma and chest pains not substantiated by physician's diagnosis, expert opinion, or competent evidence); *compare Alvarado*, 267 F.3d at 651 (defendants' motion to dismiss properly denied when plaintiff submitted records showing severe asthma since childhood that resulted in multiple trips to the emergency room while incarcerated); *see also Davidson*, 920 F. Supp. at 309 (plaintiff's allegation that smoke aggravated existing allergies unsubstantiated).

The record in this case, however, when construed in a light most favorable to the plaintiff, presents a distinctly different situation from the

circumstances at issue in those actions.  Plaintiff asserts that prior to his

arrival at FCI Ray Brook, he did not experience asthma.  Plaintiff further

alleges, and those allegations are substantiated through affidavits of fellow

inmates, that while at FCI Ray Brook he has been exposed to ETS.

Plaintiff's medical records additionally reflect extensive complaints of

symptomology associated with asthma, leading to treatment through the

administration of inhalers and other prescription medication.  Lastly,

though the record appears to be incomplete and does not contain any

records associated with the ensuing visit, plaintiff's medical records reflect

that on January 28, 2004 he was found unconscious while being

processed into the facility's SHU unit, and was taken to a local hospital

emergency room for diagnosis and treatment.  *See* Lee Decl. (Dkt. No. 37)

Doc. 4, at 6.  Plaintiff attributes this incident to exposure to cigarette

smoke and his resulting respiratory difficulties.  *See* Plaintiff's Statement of

Facts (Dkt. No. 40) at 1.

       For these reasons, which in my prior report and recommendation

were accepted for purposes of the pending motion, I found the existence

of triable issues of material fact precluding a finding as a matter of law that

objectively, plaintiff was not exposed to past harm associated with

exposure to ETS.   In their motion, defendants do not challenge this ruling.

        2)     <u>Subjective Element</u>

It is also readily apparent from the record that in addition to satisfying the objective prong of the *Farmer* test under *Estelle* or *Helling*, plaintiff could establish the level of deliberate indifference on the part of some prison officials necessary to support a cause of action under the Eighth Amendment.  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

As defendants note, over time the BOP has taken increasingly aggressive measures to protect inmates, as well as employers and visitors, at BOP facilities like FCI Ray Brook, from exposure to secondhand smoke.  The implementation of such policies, notwithstanding plaintiff's claim that they are not rigidly enforced, somewhat undermines any claim of deliberate indifference.  *See Scott v. District of Columbia*, 139 F.3d 940, 944 (D.C. Cit. 1998) (citing, *inter alia*, *Helling*, 509 U.S. at 36,

113 S. Ct. at 2482); *Davidson*, 920 F. Supp. at 309.  Yet, plaintiff has submitted evidence which, when considered in a light most favorable to him, suggests that prison workers at FCI Ray Brook have allowed smoking in his presence, despite these policies and his known condition.

Pivotal to defendants' motion is their claim that by balancing the rights of nonsmokers like Colon to be free from ETS against those of smoking inmates, as well as weighing the security concerns which would be implicated through immediate change to a zero tolerance policy, prison officials acted reasonably and therefore did not violate plaintiff's Eighth Amendment rights.  The argument, however, implicates a question of reasonableness, an issue inherently fact-laden and rarely resolvable on motion for summary judgment.  *See*, *e.g.*, *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) (noting that where the material historical facts on the issue of reasonableness remain disputed, factual questions must be resolved by the factfinder); *see also Burke v. Warren County Sheriff's Dep't*, 890 F. Supp. 133, 138 (N.D.N.Y. 1995) (Scullin, J.) (observing that "questions involving the reasonableness of a person's conduct are ordinarily reserved for resolution by a trier of fact").

More importantly, defendants' motion misses the point entirely.

24

While as a general proposition it may have been prudent, and not in violation of the Eighth Amendment, to implement a no-smoking policy within the facility on an incremental basis, plaintiff's claim involves a different set of facts. Plaintiff maintains that while knowing that he suffers from a condition exacerbated by exposure to smoke, prison officials nonetheless allowed those inmates in close proximity to him to smoke. Regardless of the security concerns addressed in defendants' response, a reasonable factfinder could conclude that steps should have nonetheless been taken to insure that Colon was not exposed to ETS. I therefore recommend denial of defendants' motion to the extent that it is predicated upon a belief that, as a matter of law, no Eighth Amendment violation is established.

C.    Personal Involvement

The more serious issue in the case concerns the level of involvement of the remaining defendants in any exposure of Colon to cigarette smoke and, it follows, their level of awareness that such exposure was occurring. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing

*Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and

*McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*,

434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section

1983 cause of action against an individual, a plaintiff must show some

tangible connection between the constitutional violation alleged and that

particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.

1986).

A supervisor cannot be liable for damages under section 1983 solely

by virtue of being a supervisor – there is no *respondeat superior* liability

under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.

2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be

liable in one of several ways: 1) the supervisor may have directly

participated in the challenged conduct; 2) the supervisor, after learning of

the violation through a report or appeal, may have failed to remedy the

wrong; 3) the supervisor may have created or allowed to continue a policy

or custom under which unconstitutional practices occurred; 4) the

supervisor may have been grossly negligent in managing the subordinates

who caused the unlawful event; or 5) the supervisor may have failed to act

on information indicating that unconstitutional acts were occurring.

*Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

In his amended complaint, Colon alleges that defendant Smith "Knowingly Houses Smoking inmates with NON-SMOKERS. . .", and that this practice "is apparently upheld by [defendants Copeland and Hurley]." Amended Complaint (Dkt. No. 13) ¶ 23.  Nowhere in the complaint does plaintiff allege that <u>he</u> was housed with a smoking inmate who, despite the requirement that both occupants consent before a two person cell may become a smoking area (prior to April 1, 2006), smoked in his presence. A careful reading of plaintiff's papers in opposition to the motion for summary judgment, moreover, confirms the lack of any such allegations. Plaintiff's memorandum does allege that based on their positions, defendants Smith, Hurley and Copeland were responsible for the proper placement of inmates and should have transferred him to prevent further harm.  Plaintiff's Memorandum (Dkt. No. 73) at 8.  The record before the court, however, fails to contain any evidence of awareness of those defendants that inmates in or near plaintiff's assigned cell or unit were smoking in his presence.  The subjective element of plaintiff's claim therefore cannot be met, as it relates to those three defendants.

27

The relationship of the remaining defendants, including former Wardens Nalley and Drew, as well as BOP Regional Director Mickey Ray, to the constitutional violations is even more attenuated.  Plaintiff alleges, for example, that defendants Drew and Ray – allegations that also presumably extend to defendant Nalley – "as supervisors are chargeable with knowledge of the conditions at Raybrook."  Plaintiff's Memorandum (Dkt. No. 73) at 9.  This allegation typifies the quintessential *respondeat superior* argument which the courts have consistently rejected in the context of alleged constitutional deprivations, requiring more direct, personal involvement in the occurrences giving rise to the violation.  *See Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501.

Plaintiff, also argues, however, that because of their involvement in reviewing his grievances regarding ETS exposure, Warden Drew and Regional Director Ray are potentially liable.  Plaintiff's assertions of liability on the part of defendant Ray who, according to his declaration, merely received plaintiff's grievance and forwarded it on to another official for an investigation, are legally insubstantial.  *See* Ray Decl. (Dkt. No. 72-9).  Such an allegation, without more, does not give rise to a finding of personal liability for a constitutional deprivation.  *See Gates v. Goord*, No.

28

99 Civ. 1378, 2004 WL 1488405, at *8 (S.D.N.Y. July 1, 2004) (granting

prison superintendent's motion for summary judgment based on lack of

personal involvement where superintendent received plaintiff's complaint,

one of thousands received yearly from inmates, and delegated complaint

to deputy superintendent to investigate and respond to plaintiff); *Amaker v.*

*Goord*, No. 98 CIV. 3634, 2002 WL 523371, at *16 (S.D.N.Y. Mar. 29,

2002) (indicating that letters sent by *pro se* inmate to DOCS official, where

complaints were delegated to other prison officials for further investigation,

were insufficient to establish liability or personal knowledge on the part of

the DOCS official receiving the letters).

Although plaintiff's allegations against defendant Ray are

exceedingly modest, his contentions as to former Warden Drew are more

formidable.  Significantly, in his declaration former Warden Drew does not

specifically address plaintiff's particular circumstances, nor does he deny

any awareness of Colon's complaints to having been exposed to ETS.

*See generally* Drew Decl. (Dkt. No. 72-4).  Indeed, the record reveals that,

after an apparent investigation into the prison staff's enforcement of the

no-smoking policy, defendant Drew responded to plaintiff's medical

complaints, which plaintiff attributed to his exposure to secondhand

smoke, and found no evidence to support plaintiff's claim that the staff was permitting violation of the policy.  Lee Decl. (Dkt. No. 37) Doc. 2A. Former Warden Drew also denied plaintiff's request for administrative remedy to prevent the staff from smoking within fifteen feet of the entrance to the Housing Unit, reasoning that an investigation indicated the staff were complying with no-smoking regulations.  *Id.*, Doc. 3A.  Unlike a response which merely provides information to an inmate, a prison official's response to grievances, or other inmate complaints, which defends or explains alleged constitutional violations, can provide a sufficient basis to sustain a plaintiff's claim of personal involvement.  *See*, *e.g.*, *Johnson v. Wright*, 234 F. Supp. 2d 352, 363-64 (S.D.N.Y. 2002) ("Personal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint.") (collecting cases); *Walker v. Pataro*, No. 99 CIV. 4607, 2002 WL 664040, at *14 (S.D.N.Y. Apr. 23, 2002) (denying summary judgment where superintendent evaluated plaintiff's grievance and defended decision to transfer plaintiff); *McPherson*, 29 F. Supp. 2d at 145 (denying summary judgment to superintendent where her denial of plaintiff's request for a smoke-free dorm suggested she was

30

personally involved in the decisions resulting in plaintiff's lawsuit).

Based upon the foregoing, I find that the plaintiff has failed to establish the involvement of defendants Smith, Copeland, Hurley, Nalley, and Ray in the case in the constitutional violations alleged in his complaint.  Questions of fact remain, however, regarding the personal involvement of defendant former Warden Drew.

IV.    SUMMARY AND CONCLUSION

Plaintiff, who undeniably suffers from an asthma condition exasperated by exposure to ETS, alleges that the defendants, having been aware of his condition, failed to take appropriate measures to ensure against his exposure to second hand smoke.  Both plaintiff's complaint and the record now before the court, however, are lacking in specifics which would establish the awareness of defendants Smith, Copeland, Hurley, Nalley and Ray of circumstances giving rise to that exposure and his or her failure to act to reasonably protect him against them. Accordingly, I recommend that defendants' motion for summary judgment be granted in part and the remaining claims in plaintiff's complaint be dismissed as a matter of law, except as to defendant Drew, and find it thereby unnecessary to address defendants' remaining argument,

asserting entitlement to qualified immunity.[9]

Based upon the foregoing it is hereby

RECOMMENDED, that defendants' motion for summary judgment
(Dkt. No. 72) be GRANTED IN PART, and plaintiff's remaining claims be
DISMISSED as to defendants Smith, Copeland, Hurley, Nalley and Ray,
but otherwise DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within
which to file written objections to the foregoing report.  Such objections
shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS
REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.
28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,*
984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of
this report and recommendation in accordance with the local rules of this
court.

---

[9]     Only defendants Hurley, Copeland, and Smith allege they are entitled to
qualified immunity.  *See* Dkt. No. 72.

Dated:      May 31, 2007
            Syracuse, NY


                                    _____
                                    David E. Peebles
                                    U.S. Magistrate Judge