IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

FELIX ANTONIO COLON,

                                    Plaintiff,              Civil Action No.
                                                            9:03-CV-1018 (LEK/DEP)

          v.

D.B. DREW, Warden, FCI Ray Brook,

                                    Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR THE PLAINTIFF:

FELIX ANTONIO COLON, Pro Se
1523 Manson Street
Norfolk, VA  23523

FOR THE DEFENDANT:

RICHARD S. HARTUNIAN              WILLIAM H. PEASE, ESQ.
UNITED STATES ATTORNEY           Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Felix Antonio Colon, a former federal prison inmate who is

proceeding *pro se* and *in forma pauperis*, commenced this action in 2003

against several employees of the Federal Bureau of Prisons ("BOP")

asserting a variety of causes of action and claiming deprivation of his constitutional rights.  Plaintiff, who has been diagnosed as suffering from asthma, alleges that as a result of the laxity in enforcement of BOP and local smoking policies at the correctional facility in which he was housed at the relevant times he was exposed to environmental tobacco smoke ("ETS"), or second-hand smoke, causing him to suffer adverse physical consequences.  Colon asserts that his exposure to ETS represented cruel and unusual punishment, in violation of his rights as secured under the Eighth Amendment.

During the seven-year pendency of this action plaintiff's claims have been winnowed down significantly, in terms of both the defendants named and the claims asserted.  What remains is a *Bivens*[1] claim for past harm caused by his exposure to ETS against the warden of the prison facility in which the ETS exposure is alleged to have occurred.

For the third time since inception of the action, plaintiff's claims are the subject of a summary judgment motion, filed on behalf of the remaining defendant in the action.  In his motion, relying heavily upon

---

[1]     Although purportedly brought under 42 U.S.C. §1983, *inter alia*, plaintiff's Eighth Amendment claim has been treated as having been asserted under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotis,* 402 U.S. 388, 91 S. Ct. 1991 (1971).

opinions of a pulmonologist who has reviewed pertinent records and has opined that exposure to ETS cannot cause asthma, and that in any event plaintiff's symptoms are inconsistent with a diagnosis of asthma, defendant contends that no reasonable factfinder could conclude that Colon suffered serious medical consequences as a result of his exposure to ETS at the prison.  Having reviewed the record and concluded, as I have on two prior occasions, that triable issues of material fact exist and preclude the entry of summary judgment, I recommend that defendant's motion be denied.

I.      BACKGROUND[2]

Prior to his release in or about July of 2009, plaintiff was a federal inmate entrusted to the custody of the BOP.  Defendant's Appendix ("Appx.") (Dkt. Nos. 113-5 through 113-15) 162.  At the times relevant to the claims asserted in his complaint, plaintiff was designated to the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), located in Ray Brook, New York.  *Id.; see also* Amended Complaint (Dkt. No. 13) ¶ 17.

Plaintiff, who does not smoke cigarettes, entered FCI Ray Brook on May 23, 2002.  Appx. 92-93, 95- 96, 162.  Prior to that date Colon was

---

[2]      In light of the procedural posture of the case the following recitation is derived from the record now before the court with all inferences drawn and ambiguities resolved in favor of the plaintiff.  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

3

confined in several other BOP facilities in which he was not exposed to
ETS.  Appx. 94- 95.  While at FCI Ray Brook plaintiff was housed either in
the Genesee Unit, which consists of variously configured cells
accommodating between two and twelve inmates, or in the facility's
special housing unit ("SHU").  Amended Complaint (Dkt. No. 13) ¶ 17;
Appx. 103-105, 165-68.  Most of the multiple inmate cells to which plaintiff
was assigned within the Genesee unit contained inmates who smoked,
including as many as six or seven in the ten-person cell to which he was
initially assigned.  *Id.* at 103-105, 108-110, 112-113.

Plaintiff was diagnosed with and treated for a respiratory condition
during the period of his incarceration at FCI Raybrook, dating back to his
first reported complaint of respiratory difficulties on April 10, 2003.  Appx.
118-19, 254.  On that occasion Colon complained to prison medical
officials of eye irritation, dizziness, and fatigue, symptoms which he
attributed to his exposure to cigarette smoke.  *See id.* at 254.

Following that initial encounter in April of 2003, plaintiff presented to
medical personnel at FCI Ray Brook on several occasions complaining of
various symptomology including shortness of breath, fatigue, chest and
musculoskeletal pain, and migraine headaches.  *See generally* Appx. 236-
308.  Some of the notes recorded concerning those visits make reference

4

to a diagnosis of asthma, *see*, *e.g.*, Appx. 271, and on at least one occasion plaintiff was placed in a pulmonary clinic for purposes of monitoring his asthma condition.  Appx. 245; *see also* Appx. 236, 238, 240.  During his time at FCI Ray Brook plaintiff was treated for his asthma condition in several ways including through the use of Albuterol and Triamcinolone inhalers.  Appx. 237-238, 240, 242, 246, 248, 250. According to plaintiff's medical records, while at FCI Ray Brook he was required to use his Triamcinolone inhaler daily, as prescribed, and his Albuterol inhaler as often as two or three times each day.  *See id.*

On January 28, 2004, while being held in a processing area awaiting transfer into solitary confinement, plaintiff was discovered on the floor and unresponsive.  Appx. 135-42, 241.  Plaintiff was taken to a local hospital emergency room where he was treated and released.  Appx. 281-89.  A report of that hospital visit reflects a clinical impression of "asthma" and a final diagnosis of "chest pain/asthma."  Appx. 286, 289.

Plaintiff's claims in this action, which stem from his attribution of the physical difficulties he has experienced to ETS exposure, implicate various BOP policies and practices, both nationwide and at the facility level.  A systemwide smoking policy was implemented by the BOP in August of 1994, when Program Statement 1640.03, addressing the

5

designation of smoking and non-smoking areas, went into effect.  Appx.

371, 378-83; *see also* Appx. 311, 317-22.  At the time of plaintiff's

admission into FCI Raybrook on May 23, 2002, the facility operated under

Program Statement 1640.03 and Institution Supplement RBK 1640.3A,

entitled "Smoking/No Smoking Areas," and dated August 17, 2000.  Appx.

371-72, 384-85; *see also* Appx. 312-13.  Under that local policy, smoking

was prohibited in all areas of the facility unless denoted otherwise by sign

reading "Designated Smoking Area."  *Id.*  At the time, smoking was

allowed within housing areas only in individual cells; the policy provided

that non-smoking inmates would not be housed with smokers as a general

rule, and that in the event of a temporary situation requiring a smoker to

be housed with a non-smoker, the cell would become a non-smoking cell.

*Id.*

On August 30, 2002, Institution Supplement No. RBK 1640.3B was

implemented to clarify the prior institutional policy.  Appx. 372, 386-87.

Under that revision, smoking continued to be prohibited in all areas except

those with a sign designating otherwise, and was permitted only in two-

person cells of regular housing units, and then only when both occupants

agreed to permit smoking.  Appx. 372.  The policy specifically provided

that smoking was not permitted in any cell housing more than two

inmates.  *Id.*

Effective on July 15, 2004, BOP Program Statement 1640.03 was superseded by a new Program Statement 1640.04, dated March 15, 2004, effectively banning all indoor smoking at BOP facilities, with limited exceptions not applicable in this case. Appx. 373, 388-94; *see also* Appx. 311, 327-333.  Under Program Statement 1640.04, a facility warden was permitted, in his or her discretion, to permit smoking in clearly identified outside areas.  Appx. 373, 388-94.  In response to Program Statement 1640.04, on August 23, 2004 defendant Drew, the warden at FCI Ray Brook, issued a new Institution Supplement, No. RBK 1640.3C, allowing smoking by both inmates and staff only in designated outdoor areas, and prohibiting smoking in any inside areas, including housing units themselves.[3]  *Id.*; *see also* Appx. 311-12.

At the heart of this action is a disagreement regarding the level of enforcement of these smoking policies at FCI Ray Brook.  According to the defendant, the changes mandated by the BOP in smoking policies were implemented at FCI on a graduated basis.  Appx. 373-74.  As the facility transitioned to a smoke free environment, Warden Drew provided

---

[3]     Defendant Drew was the warden at FCI Ray Brook between June 15, 2003 and February 5, 2005.  Appx. 370-71.

7

staff with a certain amount of discretion as to whether to issue a formal

disciplinary notice to an inmate caught violating the smoking policy, or

instead simply to issue a warning.  Appx. 373-74.  This approach was

taken in order to ameliorate the impact of the transition upon smoking

inmates, and thereby to minimize the potential for inmate unrest and

corresponding security concerns.  *Id.*

Notwithstanding the somewhat tempered approach taken during the

transitional period, defendant maintains that the BOP and local

policies regarding smoking have been enforced at FCI Ray Brook, and the

Genesee Unit in which Colon was housed at certain of the relevant

times is staffed around the clock with a unit officer who patrols the area to

ensure compliance with all institution rules and regulations, including

those regarding smoking. Appx. 374-75.  Both staff members and inmates

are reminded periodically of the smoking policies in effect at the institution

through written memoranda.  Appx. 375.  Violators are either informally

reminded of the smoking policies or are the subject of more formal action,

including through the issuance of incident reports.  Appx. 374-75.

Between the beginning of 2002, the year in which plaintiff arrived at FCI

Ray Brook, and the end of 2003, 107 incident reports were administered

to inmates for smoking in non-designated areas; twenty-five of those were

8

written for violations occurring in the Genesee Unit.  *See id.*

Plaintiff's assertions regarding the level of enforcement of the existing smoking policies are squarely at odds with those of the defendants. Plaintiff contends, and has earlier submitted both his declaration to that effect and affidavits from fellow inmates corroborating his claim, that the smoking policy is not faithfully enforced at FCI Ray Brook, a fact he attributes in part to shortage of staff and overcrowding of inmates as well as poor ventilation.  *See* Colon Aff. (Dkt. No. 40) at 2.  According to Colon, inmates are still permitted to smoke in housing units throughout the day and particularly after 8:30 p.m. when, according to him, the units are locked down.  *Id*. at 8. Fellow inmates confirm that inmates and staff members are freely permitted to smoke cigarettes throughout the institution, including near entrances to the dining hall and the Genesee Housing Unit.  Appx. 169-178.  One of those inmates states that he has been permitted to smoke cigarettes freely while in the same room as the plaintiff, without consequence. *See* Belcher Aff. (Appx. 171-72).

Plaintiff complained regarding his exposure to ETS not only to medical personnel at FCI Ray Brook, but to various administrators including Warden Drew.  On July 16, 2003, plaintiff filed a formal Request

9

for Administrative Remedy in which he claimed to have suffered from shortness of breath, chest pain, headaches and dizziness "due to the lack of supervision enforcing the non-smoking policy. . .." Appx. 180. That filing resulted in a formal written response from Warden Drew, dated August 6, 2003, acknowledging receipt of the grievance and advising that the defendant found no evidence to support his claim that the no-smoking policy was not being enforced. *Id.* at 181.

Plaintiff filed a second Request for Administrative Remedy on July 31, 2003, claiming that a staff member had violated the no smoking policy by smoking within fifteen feet of a building entrance; in that grievance plaintiff requested that he be transferred to a non-smoking facility. Appx. 182. That grievance yielded a response on August 25, 2003 from Assistant Warden E. Chester, who signed on behalf of Warden Drew, advising plaintiff that staff members were utilizing appropriate designated smoking areas and denying plaintiff's transfer request. *Id.* at 183.

In addition to those formal written grievances, plaintiff contends he orally notified Warden Drew of his complaints regarding ETS exposure on more than one occasion during lunch time at the facility. Appx. 125-29. On those occasions Warden Drew responded that plaintiff should take up the matter with unit staff or file an additional Request for Administrative

remedy.  *Id.*

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on August 18, 2003, and filed an

amended complaint as a matter of right on January 9, 2004, revising his

initial claims somewhat and adding several defendants to those initially

sued.  Dkt. Nos. 1, 13.   Plaintiff's amended complaint named several

BOP employees as defendants, including Warden Drew, and purported to

assert three causes of action, including under 42 U.S.C. §§ 1983, 1985

and 1986.[4]  *Id.*

On December 29, 2004, those defendants who had appeared in the

action moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure or, alternatively, for summary

judgment dismissing plaintiff's claims as a matter of law pursuant to Rule

56 of the Federal Rules of Civil Procedure.  Dkt. No. 37.  The arguments

raised in defendants' motion were addressed in a report and

recommendation issued by me on February 1, 2006, Dkt. No. 51, and later

---

[4]      In the introduction to his amended complaint, plaintiff also professes to assert claims under 18 U.S.C. §§ 241 and 242. Those statutes, however, are criminal in nature and do not give rise to civil actions for private enforcement. *Ippolito v. Meisel,* 958 F. Supp. 155, 161 (S.D.N.Y. 1999). In any event, since plaintiff's reference to those provisions is not reiterated in his three designated causes of action, I will not address them in this report and recommendation.

adopted in full by order issued by District Judge Lawrence E. Kahn on March 20, 2006.  Dkt. No. 55.  Following the issuance of that order, all that remained of plaintiff's complaint was a *Bivens* cause of action alleging cruel and unusual punishment based upon plaintiff's past exposure to unhealthy levels of ETS, causing or aggravating plaintiff's asthma condition.

Following discovery, the defendants remaining in the case renewed their motion for summary judgment, arguing as a matter of law that no reasonable factfinder could conclude from the evidence in the record that plaintiff can satisfy the subjective element of an ETS claim under the Eighth Amendment, and that prison officials at FCI Ray Brook acted reasonably in implementing smoking restrictions on a graduated basis. Dkt. No. 72.  Certain of the defendants also argued their entitlement to qualified immunity, while others maintained that they were not personally involved in the constitutional deprivations alleged.  *Id.*  Following my issuance of a second report on May 31, 2007, recommending that plaintiff's remaining claims be dismissed as against all of the defendants with the exception of Warden Drew, Dkt. No. 74, District Judge Kahn issued a decision and order on July 5, 2007 adopting the report and recommendation and dismissing of all remaining claims except those

against defendant Warden Drew.  Dkt. No. 77.  On request for reconsideration, however, District Judge Kahn reversed himself in part and issued a subsequent decision and order dated December 17, 2007 concluding that defendant Drew was entitled to qualified immunity and ordering dismissal of all remaining claims in the action.[5]  Dkt. No. 80.

On June 5, 2009, the United States Court of Appeals for the Second Circuit reversed Judge Kahn's decision and resulting judgment dismissing plaintiff's claims against Warden Drew, and remanded the matter for further proceedings.  *See* Mandate (Dkt. No. 90).  In its decision, the Second Circuit noted the right to be free from deliberate indifference to serious medical injury caused by excessive exposure to ETS was clearly established at the relevant times, and that issues of fact were presented regarding whether the defendant took sufficient action to protect plaintiff from such exposure.  *Id.*

Upon return of the matter to this district, the parties engaged in additional discovery.  Now that discovery is closed defendant has filed yet another motion for summary judgment seeking dismissal of plaintiff's claims against him.  Dkt. No. 113.  In his most recent motion Drew argues,

---

[5]     In their motion defendants sought qualified immunity only on behalf of defendants Juliette Hurley, Connie Copeland, and Harley Smith, and did not extend that request to defendant Drew.  *See* Dkt. No. 72.

13

*inter alia*, that plaintiff cannot establish either that he had asthma, or that excessive exposure to ETS can cause that condition. *Id.* Defendant therefore contends that plaintiff cannot establish either any violation of his right under the Eighth Amendment to be free of cruel and unusual punishment, or defendant Drew's personal involvement in such a deprivation. *Id.* Plaintiff has since responded in opposition to defendant's motion reasserting his claim that he suffers from various medical ailments resulting from his exposure to ETS while at FCI Ray Brook and arguing that despite his awareness of that condition defendant Drew failed to adequately respond. Dkt. No. 114.

Defendant's summary judgment motion, which is now fully briefed and ripe for determination, has been referred to me once again for the issuance of a report and recommendation pursuant to Rule 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.   <u>DISCUSSION</u>

A.   <u>Summary Judgment Standard</u>

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.

R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party.  *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Merits of Plaintiff's Eighth Amendment ETS Claim

16

The principles associated with plaintiff's ETS claim and the interplay with the standard Eighth Amendment cruel and unusual punishment paradigm are both well established.  The Eighth Amendment's prohibition of cruel and unusual punishment, encompassing the treatment that a prisoner receives as well as prison conditions that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society," *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (*citing, inter alia, Estelle*), have long been applied to circumstances in which prisoners have alleged medical problems resulting from exposure to ETS.  *See Helling v. Mckinney*, 509 U.S. 25, 31-32, 113 S. Ct. 2475, 2480 (1993).  Under Eighth Amendment jurisprudence it is recognized that while the Constitution does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).  Accordingly, a claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from

17

an objective point of view, and the plaintiff must demonstrate that prison

officials acted subjectively with "deliberate indifference". *See Leach v.*

*Dufrain*, 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (*citing*

*Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord,*

No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn,

J. & Homer, M.J.); *see also, generally*, *Wilson,* 501 U.S. 294, 111 S. Ct.

2321.[6]

### 1)    Objective Element

Not every injury or deprivation experienced by a prison inmate rises

to a level of constitutional significance under the Eighth Amendment,

thereby justifying federal intervention; "a prison official's act or omission

must result in the denial of 'the minimal civilized measure of life's

necessities'".  *See Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977 (*quoting*

*Rhodes*, 452 U.S. at 347, 101 S. Ct. at 2399).

In analyzing Eighth Amendment ETS exposure claims applying now

familiar Eighth Amendment principles, courts have differentiated

between those alleging present harm due to ETS exposure, and those

claims alleging future harm caused by exposure to secondhand smoke.

---

[6]    Copies of all unreported decisions cited in this document have been
appended for the convenience of the *pro se* plaintiff.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001); *Henderson v.*

*Sheahan*, 196 F.3d 839, 845-47 (7th Cir. 1999), *cert. denied*, 530 U.S.

1244, 120 S. Ct. 2691 (2000); *Oliver v. Deen,* 77 F.3d 156, 159-60 (7th

Cir. 1996); *Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995);

*McPherson v. Coombe*, 29 F. Supp. 2d 141, 145 (W.D.N.Y. 1998); *see*

*also, e.g., Warren v. Keane*, 196 F.3d 330, 333 (2d Cir. 1999). Since all

that remains of plaintiff's claims are those related to past injury, I will

discuss only this aspect of the objective element of the claim.

Like other Eighth Amendment claims of deliberate indifference to

medical needs, plaintiff's claim that ETS exposure endangered his

existing health is governed by the two-prong test adopted in *Wilson*. *See*

*Alvarado,* 267 F.3d at 651; *see also Davidson v. Coughlin*, 920 F. Supp.

305, 309 (N.D.N.Y. 1996) (McAvoy, C.J.). To state a claim for past injury

caused by ETS exposure under the objective prong of the *Wilson* test, a

plaintiff must show that ETS caused him or her to suffer serious adverse

health consequences.[7]  *Henderson,* 196 F.3d at 845.  A serious medical

need or injury is one that a physician has diagnosed as requiring

---

[7]      In certain circumstances, exposure to ETS can also give rise to a cognizable constitutional claim when it has the known effect of aggravating medical conditions. *E.g., Alvarado*, 267 F.3d at 651 (plaintiff's complaint stated Eighth Amendment claim under *Estelle* when he submitted documentation showing that his severe chronic asthma was made worse by ETS).

treatment, or a medical condition that is so obvious that even a lay person would recognize the need for treatment. *Henderson*, 196 F.3d at 846.

Defendant contends plaintiff cannot prove that he has suffered from a serious medical condition, asserting that 1) plaintiff does not suffer from asthma, and 2) his respiratory symptoms were not caused by ETS exposure.  In support of his contention, defendant has submitted a declaration of Dr. Robert W. Irwin, a board certified pulmonary specialist licensed in the State of New York, together with an accompanying report, dated February 18, 2010.  Appx. 361-369.  In that report, based upon his review of the plaintiff's medical records, Dr. Irwin opines that plaintiff's symptoms do not meet the clinical criteria for a diagnosis of asthma, and plaintiff was incorrectly diagnosed.  According to Dr. Irwin, plaintiff's symptoms are more likely attributable to a mental condition, including anxiety and depression.  In his reply, defendant argues that Dr. Irwin's opinions are uncontradicted, and because plaintiff has failed to submit his own expert report, the court should accept Dr. Irwin's opinions as undisputed.

At the same time, however, defendant candidly admits a significant fact–that plaintiff's medical records indisputably describe him as suffering from asthma.  To be sure, plaintiff's medical records from FCI Ray Brook

as well as those documenting plaintiff's emergency room visit, all of which were presumably prepared by qualified medical personnel, reflect a diagnosis of asthma.  Additionally, defendants do not dispute that upon his arrival at FCI Ray Brook plaintiff's only reported medical history was for depression, anxiety and insomnia.  Defendant seems to suggest, however, that in light of Dr. Irwin's opinion that plaintiff was misdiagnosed, the court should simply overlook the documented facts that over a substantial period of time plaintiff's asthma condition was monitored by the pulmonary clinic at FCI Ray Brook and treated with two separate inhaler prescriptions.  These facts, which seemingly contradict Dr. Irwin's opinion, plainly present an issue of fact that can only be resolved at trial.

Defendant also emphasizes that Dr. Irwin goes further and states his opinion that ETS cannot cause asthma in adults.  *See* Irwin Decl. (Dkt. No. 113-13) ¶ 6 (Appx. 363).  Conspicuously absent from Dr. Irwin's affidavit and report, however, is an opinion as to whether ETS can *aggravate* an existing asthma condition, as plaintiff now claims.  To the contrary, in his report Dr. Irwin acknowledges that "the literature is not consistent regarding whether environmental tobacco smoke worsens asthma which has been present as a chronic disease."  Appx . 365.

As I have already noted, plaintiff's prison medical records are not

21

only replete with indication of shortness of breath and other symptoms

consistent with his claim of asthma, but specifically characterize his

condition as such.  In this action plaintiff attributes those symptoms, which

he did not experience prior to entry into the facility, to his exposure to ETS

at Ray Brook.  Considering these facts, together with the fact that plaintiff

was not exposed to ETS at any of the federal prison facilities in which he

was previously housed, a reasonable factfinder could conclude that

plaintiff's exposure to excessive quantities of ETS at Ray Brook caused or

aggravated an existing medical condition that is sufficiently serious for

purposes of the objective prong of this Eighth Amendment claim.[8]

Without citing any legal authority in support of his position, in his

motion defendant also suggests that because plaintiff received adequate

medical treatment for his condition, even though it may have been caused

or exacerbated by ETS, he possesses no Eighth Amendment claim.  That

position represents a rather myopic view of plaintiff's Eighth Amendment

rights, suggesting that although a serious condition may have been

caused by defendant's actions, or in this case inaction, the fact that his

---

[8]     It should be noted that the Second Circuit has already found that
plaintiff's allegations, including that he was housed in poorly ventilated areas with
inmates many of whom smoked one or more packs of cigarettes daily, could potentially
satisfy the objective requirement prong of the Eighth Amendment test.  *See* Dkt. No.
90.

increased symptomology has been medically addressed negates the initial

Eighth Amendment violation.[9]  This cannot be an accurate statement of

Eighth Amendment principles, anymore than saying that if a prison

inmate's arm is broken through the use of excessive force there is no

cruel and unusual punishment claim as long as prison medical officials

render adequate medical attention to address the injury.

### 2.    Subjective Element

It is also readily apparent from the record that in addition to

satisfying the objective prong of the *Wilson* test, plaintiff could establish

the level of deliberate indifference necessary to support a cause of action

under the Eighth Amendment.  Deliberate indifference exists if an official

"knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also

draw the inference." *Farmer,* 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*,

103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2

---

[9]        Perhaps defendant has confused the analysis of plaintiff's claim, which relates to the conditions of his confinement and defendant's alleged failure to protect him from the ETS exposure that resulted in serious harm to his health, with the standards governing an Eighth Amendment medical indifference claim, for which the appropriate inquiry would be whether prison officials intentionally disregarded plaintiff's medical needs, *see Estelle*, 429 U.S. at 102, 104, 97 S.Ct. at 290, 291.

(same).

As defendant notes, over time the BOP has taken increasingly aggressive measures to protect inmates as well as employees and visitors at BOP facilities like FCI Ray Brook from exposure to secondhand smoke. The implementation of such policies, notwithstanding plaintiff's claim that they are not rigidly enforced, somewhat undermines any claim of deliberate indifference. *See Scott v. District of Columbia,* 139 F.3d 940, 944 (D.C. Cir. 1998) (*citing, inter alia, Helling*, 509 U.S. at 36, 113 S. Ct. at 2482); *Davidson,* 920 F. Supp. at 309. Yet, plaintiff has submitted evidence which, when considered in a light most favorable to him, suggests that prison workers at FCI Ray Brook have allowed smoking in his presence, despite these policies and his known condition.

The question presented in connection with the portion of defendant's motion addressed in the subjective element of the Eighth Amendment test is whether Warden Drew was aware of but disregarded an excessive risk to Colon's health presented by his exposure to unhealthy levels of ETS. A defendant is sufficiently aware of a risk if that risk is obvious or was otherwise known to the defendant. *Felder v. Filion*, 368 F. App'x 253, 256 (2d Cir. 2010) (quoting *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003)) (cited in accordance with Fed. R. App. Pr. 32.1 to illustrate the continued

vitality of *Brock*).  Defendant's response to the risk must be analyzed in context of the competing interests of nonsmoking inmates and overall prison safety.  *See Trammell v. Keane*, 338 F.3d 155, 163 (2d Cir. 2003).

There is evidence in the record from which a reasonable factfinder could conclude defendant Drew was aware of but disregarded the risk to plaintiff Colon from ETS exposure.  Plaintiff's Request for Administrative Remedy dated July 16, 2003 specifically references the symptoms he claims to have experienced as a result of his exposure to ETS.  *See* Appx. 180.  That Warden Drew reviewed the Request for Administrative Remedy is demonstrated by his response dated August 6, 2003.  Appx. 181. Plaintiff also claims to have verbally informed defendant Drew of his situation on two or three additional occasions.  Appx. 125-29.   The question, then, is whether defendant Drew, after having been notified of Colon's circumstances, took reasonable steps to protect him from harm. The reasonableness of defendant Drew's response implicates an inherently fact-ladened inquiry, which is rarely resolvable on motion for summary judgment.  *See, e.g., Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) (noting that where the material historical facts on the issue of reasonableness remain disputed, factual questions must be resolved by the factfinder); *see also Burke v. Warren County Sheriff's*

*Dep't*, 890 F. Supp. 133, 138 (N.D.N.Y. 1995) (Scullin, J.) (observing that "questions involving the reasonableness of a person's conduct are ordinarily reserved for resolution by a trier of fact").

In sum, I find the existence of triable issues of fact as to whether plaintiff can satisfy the objective and subjective prongs of the Eighth Amendment test and sustain his ETS exposure claim against Warden Drew.

IV.    SUMMARY AND RECOMMENDATION

The record now before the court firmly demonstrates the existence of questions of fact as to whether plaintiff suffers from asthma or some other respiratory condition, and whether the condition was caused or exacerbated by exposure to ETS while at FCI Ray Brook.  Questions of fact also exist as to whether Warden Drew was aware of plaintiff's complaints and the effects of his exposure to ETS but failed to take reasonable steps to protect him from serious harm.  Accordingly, it is hereby respectfully

RECOMMENDED, that defendant's motion for summary judgment (Dkt. No. 113) dismissing plaintiff's complaint be DENIED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed

with the clerk of the court within FOURTEEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      January 21, 2011
            Syracuse, NY